# EXHIBIT 2

# MLBPA REGULATIONS
# GOVERNING PLAYER AGENTS
*(As Amended Effective December 4, 2019)*

**MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION**
**12 East 49th Street, 24th Fl.**
**New York, NY 10017**

**Table of Contents**

**Section 1 – Introduction** ................................................................................................. 1
**§1(A) – The MLBPA's Objectives in Regulating Player Agents** ............................... 1
**§1(B) – MLBPA's Authority to Regulate Agents and Expert Agent Advisors** ........ 2

**Section 2 – Definitions of Terms** .................................................................................. 4
**§2(A) – Definition of "player"** ...................................................................................... 4
**§2(B) – Definition of "Player"** ..................................................................................... 4
**§2(C) – Definition of "Player Agent" and "Expert Agent Advisor"** ......................... 4
§2(C)(1) – General Certification as a Representative of Players ...................................... 5
§2(C)(2) – Limited Certification to Recruit or Provide Client Maintenance Services to Players ... 5
§2(C)(3) – Certification as an Expert Agent Advisor ....................................................... 5
**§2(D) – Definition of "Recruit," "Recruiting" or "Recruitment"** ............................. 6
**§2(E) – Definition of "Client Maintenance Services"** ................................................ 6
§2(E)(1) – Marketing Services ......................................................................................... 6
§2(E)(2) – Concierge Services ......................................................................................... 6
§2(E)(3) – Legal, Accounting or Financial Services ....................................................... 7
**§2(F) – Definition of "Representative"** ........................................................................ 7
**§2(G) – Definition of "Draft Advisor"** ......................................................................... 7
**§2(H) – Definition of "Applicant"** ................................................................................ 7
**§2(I) – Definition of "Restrictive Covenant"** ............................................................. 7
**§2(J) – Definition of "Baseball Equipment"** ............................................................... 8
**§2(K) – Definition of "Regulations"** ............................................................................ 8

**Section 3 – Conduct Requiring Certification as a Player Agent or Expert Agent Advisor** .... 8
**§3(A) – Negotiation, Administration or Enforcement of Player Agreements and Rights** ..... 8
**§3(B) – Recruitment or Maintenance of Players as Clients** ....................................... 9

**Section 4 – Certification and Maintenance of Certification for Player Agents and Expert Agent Advisors** ........................................................................ 9
**§4(A) – Education, Experience and Knowledge Standards for Certification** ........... 10
**§4(B) – Only Individuals Can Be Certified** ............................................................... 11
**§4(C) – Applications for General Certification or Certification as an Expert Agent Advisor** ........................................................................................ 11
**§4(D) – Applications for Limited Certification Only to Recruit or Provide Client Maintenance Services** ............................................................................ 12
**§4(E) – Temporary Limited Certification** ................................................................. 12
**§4(F) – Certification to Represent Additional Players** ............................................ 13
**§4(G) – Filing An Application For Certification** ....................................................... 14
**§4(H) – Player Agent and Expert Agent Advisor Application Fee; Annual Updates and Other Fees** ....................................................................................... 14
**§4(I) – Application Review; Background Check; Additional Information** .............. 15
**§4(J) – Inactive Player Agents and Expert Agent Advisors** ................................... 16
**§4(K) – Disclaimer** ...................................................................................................... 17
**§4(L) – Relations Among Player Agents, Applicants, and their Employees, Contractors and Other Business Associates** .......................................................................... 17

i

§4(L)(1) – Duty of Loyalty..............................................................................................17
§4(L)(2) – Enforceability of Restrictive Covenants .....................................................18
§4(L)(3) – Required Consent to MLBPA Jurisdiction Over Disputes .........................19
§4(L)(4) – Temporary Determinations by MLBPA ......................................................20
**§4(M) – Denial of Certification; Limits and Conditions on Certification** ..............20
**§4(N) – Application Processing; Notice of Certification; Notice of Successful Completion of Application; Notice of Denial of or Limitations on Certification; Right to Appeal** ..21
**§4(O) – Revocation or Suspension of Certification; Other Discipline** ....................23
**§4(P) – Notice of Discipline; Right to Appeal** .......................................................23

**Section 5 – Standards of Conduct for Player Agents, Expert Agent Advisors and Applicants** ....................................................................................................................24
**§5(A) – Requirements for Applicants, Player Agents and Expert Agent Advisors** ..............24
§5(A)(1) – Provide and Update Required Information ..................................................24
§5(A)(2) – Agree to Dissemination of Agent and Advisor Information .......................24
§5(A)(3) – Provide Copies of Application or Registration to Players Upon Request....25
§5(A)(4) – Provide Annual Fee Statements to Players .................................................25
§5(A)(5) – Attend Mandatory Meetings........................................................................25
§5(A)(6) – Comply with Fee Limitations......................................................................25
§5(A)(7) – Provide Copy of Representation Agreement to Player and the MLBPA .....25
§5(A)(8) – Allow Independent Audit .............................................................................25
§5(A)(9) – Transfer Records of Players .........................................................................25
§5(A)(10) – Report Violations of Player Rights ...........................................................26
§5(A)(11) – Disclose to the MLBPA all Communications with Players Who Are Not Clients ...26
§5(A)(12) – Provide Information to and Cooperate with the MLBPA .........................26
§5(A)(13) – Provide Adequate Supervision of those Working on their Behalf ............26
§5(A)(14) – Comply with All MLBPA Regulations .....................................................26
**§5(B) – Prohibited Conduct; Grounds for Disciplinary Action** .............................26
§5(B)(1) – Acting as Player Agent or Expert Agent Advisor without Certification.....26
§5(B)(2) – Unauthorized Representation of Players ......................................................26
§5(B)(3) – Employing or Retaining Unauthorized Recruiter(s) or Provider(s) of Client Maintenance Services ..................................................................................................27
§5(B)(4) – Compensating Recruiters or Client Maintenance Services Providers Primarily on Commission ............................................................................................27
§5(B)(5) – Improper Inducements ..................................................................................27
§5(B)(6) – Violating Duty of Loyalty ...........................................................................32
§5(B)(7) – Violating a Temporary Determination by the MLBPA................................32
§5(B)(8) – Failing to Disclose Communication with Non-Client Player(s).................32
§5(B)(9) Persisting in Unwelcome Communication with a Player ...............................33
§5(B)(10) – Providing False or Misleading Information ...............................................33
§5(B)(11) – Cooperating or Communicating with Club to Undermine a Player or Fellow Player Agent……….. ....................................................................................33
§5(B)(12) – Actual or Potential Conflicts of Interest....................................................34
§5(B)(13) – Undermining Collectively Bargained Rights and Benefits .......................35
§5(B)(14) – Unauthorized Disclosure of Confidential Information...............................35
§5(B)(15) – Unlawful or Dishonest Conduct ................................................................35

§5(B)(16) – Representing Replacement Player(s) During a Strike or Lockout ..............................35
§5(B)(17) – Evading Mandatory Arbitration Procedures or Failing to Comply with Arbitration
  Award ................................................................................................................................36
§5(B)(18) – Failing to Comply with the MLBPA Salary Arbitration Support Program................36
§5(B)(19) – Failing to Comply with Major League Tampering Rules ..........................................37
§5(B)(20) – Providing Banned Substances ..................................................................................37
§5(B)(21) – Participation in Gambling on Baseball or Fantasy Baseball Games ........................37
§5(B)(22) – Other Violations of Agent Regulations ....................................................................38
**§5(C) – Vicarious Liability of Player Agents, Expert Agent Advisors and Applicants** ........38
**§5(D) – Quality of Player Agent and Expert Agent Advisor Representation** .......................38

**Section 6:  Player Agent Designation Forms and Representation Agreements**....................38
**§6(A) – Player Agent Designation Form Required Each Year** ...............................................38
**§6(B) – Validity of Player Agent Designation Form**...............................................................39
**§6(C) – Player Agent Representation Agreement** ....................................................................39
**§6(D) – Copies of Player Agent Representation Agreement to Player and the MLBPA** ......39
**§6(E) – Translation of Player Agent Representation Agreement** ............................................40
**§6(F) – Representation Agreement in Name of Player Agent's Company**...............................40
**§6(G) – One Year Maximum Duration of Representation Agreement** ....................................40
**§6(H) – Prior Representation Agreements** ...............................................................................41
**§6(I) – Limitations on Player Agent Fees** ...............................................................................41
**§6(J) – Mandatory Arbitration of All Player-Player Agent Disputes** ....................................42
**§6(K) – Revocation of Player Agent Designation** ...................................................................42
**§6(L) – When Player Must Consult with the MLBPA to Terminate Agent** ...........................42
**§6(M) – Liquidated  Damages, Specific Contractual Remedies Prohibited**...........................43
**§6(N) – Approved Standard Form of Player Representation Agreement**.................................43

**Section 7 – Exclusive Arbitration Procedures for Resolving Disputes**...................................43
**§7(A) – Procedure for Resolving Disputes among Players, Player Agents, Expert Agent
  Advisors and Applicants** .................................................................................................43
§7(A)(1) – Procedure Invoked by Filing and Serving a Grievance..............................................44
§7(A)(2) – Method of Filing and Serving Grievance and other Arbitration Papers.....................44
§7(A)(3) – Respondent's Answer to the Grievance .....................................................................44
§7(A)(4) – Counterclaims by Respondent against the Grievant ...................................................45
§7(A)(5) – Grievant's Reply .........................................................................................................45
§7(A)(6) – Time Limit for Grievances and Counterclaims...........................................................45
§7(A)(7) – Application of Time Limits; Tolling, Waiver or Extension.........................................45
§7(A)(8) – Referral of Dispute to Arbitration ..............................................................................46
§7(A)(9) – Location and Schedule for Hearing.............................................................................46
§7(A)(10) – Hearing Continuances ..............................................................................................46
§7(A)(11) – Rules of Procedure for Arbitration Hearings............................................................46
§7(A)(12) – Exchange of Exhibits and Witness List; Other Discovery .......................................46
§7(A)(13) – Informal Hearing; Evidence; Testimony by Telephone or Affidavit –....................47
§7(A)(14) – Participation by the MLBPA .....................................................................................47
§7(A)(15) – Post-hearing Briefs or Argument .............................................................................47
§7(A)(16) – Arbitrator's Final and Binding Decision and Award ...............................................47

§7(A)(17) – Costs of Arbitration ................................................................................47
§7(A)(18) – Use of Proceedings and Decisions ........................................................48
**§7(B) – Procedures for Disputes Between a Player Agent or Applicant or Expert Agent Advisor and the MLBPA** .........................................................................48
§7(B)(1) – Notice to Applicant, Player Agent or Expert Agent Advisor .....................48
§7(B)(2) – Filing of Appeal by Player Agent, Expert Agent Advisor or Applicant ......48
§7(B)(3) – Contents of the Appeal ............................................................................49
§7(B)(4) – Failure to File a Timely Appeal .................................................................49
§7(B)(5) – Stay of MLBPA Action During Appeal ......................................................49
§7(B)(6) – Procedure Invoked by Filing and Serving a Grievance .............................49
§7(B)(7) – Method of Filing and Serving Grievance and other Arbitration Papers .....49
§7(B)(8) – Answer to the Grievance ..........................................................................50
§7(B)(9) – Counterclaims by Respondent against the Grievant ...............................50
§7(B)(10) – Grievant's Reply ....................................................................................50
§7(B)(11) – Time Limit for Grievances and Counterclaims .......................................50
§7(B)(12) – Submission to Arbitration .......................................................................51
§7(B)(13) – Selection of AAA Arbitrator ....................................................................51
§7(B)(14) – Location and Schedule for Hearing ........................................................51
§7(B)(15) – Hearing Continuances ...........................................................................51
§7(B)(16) – Rules of Procedure for Arbitration Hearings ..........................................51
§7(B)(17) – Exchange of Exhibits and Witness List; Other Discovery .......................51
§7(B)(18) – Informal Hearing; Evidence; Testimony by Telephone or Affidavit .........52
§7(B)(19) – Burden of Proof; Standard for Review ....................................................52
§7(B)(20) – Post-hearing Briefs or Argument ...........................................................52
§7(B)(21) – Arbitrator's Final and Binding Decision and Award ...............................52
§7(B)(22) – Costs of Arbitration ...............................................................................52
§7(B)(23) – Use of Proceedings and Decisions ........................................................52

**Section 8 – Administration, Interpretation and Enforcement of Regulations** .....................53

**Section 9 – Player Agent Advisory Committee** ..........................................................53

**Section 10 – Effective Date and Amendment** ...........................................................53

**Addendum A**...............................................................................................................55

# MLBPA REGULATIONS
# GOVERNING PLAYER AGENTS
*(As Amended Effective December 4 2019)*

## Section 1 – Introduction

These Regulations were first promulgated by the Executive Board of the Major League Baseball Players Association ("MLBPA" or "Association") in 1988. They have remained in effect since then, with limited amendments through the years, until being substantially expanded and amended in 2010, 2015, 2017 and 2018. This most recent amendment to the Regulations was adopted by the MLBPA's Executive Board on December 4, 2019, effective December 4, 2019.

### §1(A) – The MLBPA's Objectives in Regulating Player Agents

The MLBPA's primary objectives in issuing, maintaining, amending and enforcing these Regulations include the following:

- To establish and enforce minimum requirements for eligibility to become a Player Agent or Expert Agent Advisor and uniform standards of conduct and fiduciary responsibility for all Player Agents, Expert Agent Advisors and Applicants seeking to become Player Agents or Expert Agent Advisors;

- To afford each Player the opportunity to select a certified Player Agent who has agreed to abide by these Regulations and to represent or advise Players honestly, competently, loyally and zealously as a fiduciary and in harmony with the Players' membership in a collective bargaining unit;

- To afford each Player the opportunity to make better-informed decisions about his choice of certified Player Agent by making available a comprehensive disclosure of facts relevant to the ability of a person to serve as a fiduciary representative or advisor of Players, and by regulating the conduct of those persons who are engaged, on behalf of Player Agents, in the functions of an Expert Agent Advisor or in Recruiting and providing Client Maintenance Services for players;

- To ensure that Player Agents and Advisors who are affiliated with other persons and entities act in the best interests of the Players they represent and do not allow affiliated persons or entities to engage in conduct that would violate these Regulations.

- To ensure uniformity and consistency in the rules and standards applicable to Player Agents, whose business activities are often national or international in scope, notwithstanding the different, and sometimes inconsistent, laws, rules and regulations of the many national, state, and local jurisdictions that might otherwise govern these activities; and

- To provide Players, Player Agents and Expert Agent Advisors with fair, cost-effective and expeditious procedures for privately resolving any disputes concerning their relationships, transactions or contractual obligations.

## §1(B) – MLBPA's Authority to Regulate Agents and Expert Agent Advisors

The source of the MLBPA's authority to adopt and enforce these Regulations is its status as the sole and exclusive bargaining agent for all Major League Baseball Players and individuals who may become Major League Baseball Players, pursuant to Section 9(a) of the National Labor Relations Act ("NLRA"), and the collective bargaining agreement ("Basic Agreement") in effect among the MLBPA and the Major League Baseball Clubs, any Clubs which may become members of the Major Leagues, and the successors thereof ("Clubs").

Section 9(a) of the NLRA provides, in pertinent part:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the **exclusive representatives of all the employees in such unit** for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.  (Emphasis supplied.)

The Basic Agreement between the MLBPA and the Clubs provides, in pertinent part, as follows:

> **ARTICLE II -- Recognition**
>
> The Clubs recognize the Association as the sole and exclusive collective bargaining agent for all Major League Players, and individuals who may become Major League Players during the term of this Agreement, with regard to all terms and conditions of employment, provided that an individual Player shall be entitled to negotiate **in accordance with the provisions set forth in this Agreement** (1) an individual salary over and above the minimum requirements established by this Agreement and (2) Special Covenants to be included in an individual Uniform Player's Contract, which actually or potentially provide additional benefits to the Player.  (Emphasis supplied.)
>
> \* \* \*
>
> **ARTICLE IV -- Negotiation and Approval of Contracts.**
>
> A Player, if he so desires, may designate an agent to conduct on his behalf, or to assist him in, the negotiation of an individual salary and/or Special Covenants to be included in his Uniform Player's Contract with any Club, **provided such agent has been certified to the Clubs by the Association as authorized to act as a Player Agent for such purposes.**  (Emphasis supplied.)
>
> \* \* \*
>
> If the Association has notified the Office of the Commissioner that a Player has designated a certified Player Agent or Agents to act on his behalf for the purposes described in this Article IV, no Club may negotiate or attempt to negotiate an individual salary and/or Special Covenants to be included in a Uniform Player's Contract with any Player Agent(s) other than such Player Agent(s).

Under the Federal labor laws, labor organizations like the MLBPA are authorized to adopt and enforce reasonable rules and regulations, such as these Regulations, that further their legitimate interests.

The MLBPA, in making judgments about whether it should initially certify, or continue to certify, individuals to serve in a fiduciary role as Player Agents or Expert Agent Advisors, must take into account the character and conduct of those individuals, not only in relation to the Players in its bargaining unit, but also with regard to other baseball players, both professional and amateur, and persons other than baseball players. An individual who demonstrates a lack of honesty, for example, in his or her dealings with anyone, whether a Player represented by the MLBPA or not, may not measure up to the standards that should apply to Player Agents or Expert Agent Advisors. For these reasons, the Regulations are concerned with and, in certain respects, regulate Player Agents' and Expert Agent Advisors' dealings with Minor League and amateur players and other persons who are outside the scope of the bargaining unit represented by the MLBPA.

In recent years, the MLBPA has encountered a number of situations in which the actions and decisions of a certified Agent or of an Agency which employs certified Agents have been controlled or directed, either directly or indirectly, by persons and entities affiliated with the Agent or the Agency, including investors or shareholders. In this setting, the MLBPA has authority to require the certified Agent to ensure that his or her Agency and the persons and entities affiliated with the Agent or Agency, including investors and shareholders, abide by these Regulations and to enforce that requirement by disciplining or decertifying an Agent who maintains such an affiliation with an Agency or other persons or entities that violate the Regulations.

The Regulations also regulate the conduct, and require certification, of individuals who represent, assist or advise a General Certified Agent on behalf of a Player in the functions described in Section 3(A). Expert Agent Advisors assist Player Agents in many of their primary functions; thus, the MLBPA regulates Expert Agent Advisors based on the same authority and for reasons analogous to those set forth above for Player Agents. In addition, the Regulations regulate the conduct and require the certification of individuals who, on behalf of Player Agents, Recruit or provide Client Maintenance Services to players, even if those individuals do not themselves represent Players in negotiations of their playing contracts. More than twenty years of experience under the Regulations have demonstrated that Recruitment for Player Agents and the providing of Client Maintenance Services to players for Player Agents are part and parcel of the representation process itself, with such individuals frequently being the principal contact a player has with the agent or agency representing him. These are, therefore, two areas in which the effective regulation of Player Agents requires broader and more effective controls.

The ways Player Agents acquire and maintain Players as clients are directly related to the MLBPA's objectives in regulating Player Agents. A Player's initial selection of an agent, or his subsequent decision to change agents, is often the result of Recruiting by someone other than the agent, and often that Recruiter will not see himself as directly accountable to the Players as a collective whole, or the MLBPA on their behalf. Similarly, a Player's continuation as a client of an agent is often the result of interaction with someone providing Client Maintenance Services who is similarly lacking in direct accountability to Players or the MLBPA. That lack of accountability would undermine the fiduciary obligation to Players that the regulation of Player Agents is designed to promote and monitor.

Experience further shows that the employment, formally or informally, of individuals bearing no direct connection to the Players collectively has the tendency not only to foster significant intramural disputes among Player Agents regarding the acquisition of players as clients, but also to undermine the MLBPA's ability to deal with such disputes when they emerge. Accordingly, including Recruiters and Client Maintenance Service providers in the regulatory scheme enables the MLBPA to more thoroughly

and effectively regulate Player Agents and Applicants themselves, given the role these persons play in the Player Agents' representation of Players.

# Section 2 – Definitions of Terms

As used throughout these Regulations, the terms listed below have the following definitions:

### §2(A) – Definition of "player"

The term "**player**," with a lower case "p," refers to all baseball players anywhere in the world, whether amateur or professional (*e.g.,* Major League, minor league, independent league, players from foreign leagues, or collegiate or high school draft prospects), except where the term "player" is limited by other language (*e.g.*, "minor league player," "amateur player," etc.) or the context clearly provides otherwise.

### §2(B) – Definition of "Player"

The term "**Player**," with a capitalized "P," means a baseball player signed to a Major League Uniform Player's Contract or engaged in negotiations of, or preparing to negotiate, terms to be included in a Major League Uniform Player's Contract, or any other agreement or "side letter" concerning terms to be included in any future Major League Uniform Player's Contract, including:

> §2(B)(1) – any player who is a party to a Major League Uniform Player's Contract or who is listed on a Major League 40-man roster or Major League Reserve List, or a Major League Voluntarily Retired, Emergency Disabled, Military, Restricted, Disqualified or Ineligible List;

> §2(B)(2) – any player who is a Major League free agent by operation of the Basic Agreement, the Major League Rules, or his Major League Uniform Player's Contract;

> §2(B)(3) – any player who is a professional free agent player most recently employed by either a foreign or U.S. professional baseball league or club (*e.g.,* a Minor League, independent league, or Japanese league free agent), and who is engaged in negotiations of, or preparing to negotiate terms to be included in, a Major League Uniform Player's Contract; or

> §2(B)(4) – any other player engaged in negotiations of, or preparing to negotiate, any agreement or "side letter" concerning terms to be included in any future Major League Uniform Player's Contract.

### §2(C) – Definition of "Player Agent" and "Expert Agent Advisor"

The capitalized terms "**Player Agent**" and "**Expert Agent Advisor**" refer to individuals who are certified by the MLBPA and authorized thereby to engage in certain conduct, as more fully described in Sections 3(A) and 3(B). The MLBPA will certify only individuals as Player Agents or Expert Agent Advisors and not firms or business entities, such as corporations, companies,

partnerships, etc.  However, where one or more Player Agents own or conduct business as, or are employed by, a business entity, the term "Player Agent" includes the firm or business entity they own or with which they are employed or associated, unless the context clearly provides otherwise.

There are two levels of certification that the MLBPA may grant to a person as a Player Agent -- General Certification and Limited Certification.

> **§2(C)(1) – General Certification as a Representative of Players** – An individual who is designated on a *Player Agent Designation* form by at least one Player may be granted a General Certification by the MLBPA and certified to the Major League Clubs by the MLBPA as a Player Agent for that particular Player.  An individual granted such a General Certification is authorized thereby to engage in the following conduct:

>> **§2(C)(1)(a)** – as more fully described in Section 3(A), representing, assisting or advising that Player in negotiations of terms to be included in a Major League Uniform Player's Contract or of any other agreement or "side letter" concerning terms to be included in any future Major League Uniform Player's Contract, and representing that Player in dealings with any Major League Baseball Club, or League, the Commissioner's Office, or any person or entity affiliated with them, concerning the administration or enforcement of that Player's Uniform Player's Contract, the Basic Agreement or the Major League Rules; and

>> **§2(C)(1)(b)** – as described more fully in Section 3(B), Recruiting or providing Client Maintenance Services for players.

> **§2(C)(2) – Limited Certification to Recruit or Provide Client Maintenance Services to Players** – An individual who wishes to engage, on behalf of a Player Agent, in Recruiting or providing Client Maintenance Services, but does not engage in conduct described in Section 3(A) requiring a General Certification, may be granted a Limited Certification as a Player Agent by the MLBPA.  An individual granted such a Limited Certification is authorized thereby to engage, on behalf of a Player Agent, in Recruiting or providing Client Maintenance Services, as more fully described in Section 3(B).  A Player Agent who has been granted this Limited Certification is **not** authorized to engage in representing or advising individual Players in negotiations, etc., as more fully described in Section 3(A).

The MLBPA may also grant a person certification as an Expert Agent Advisor.

> **§2(C)(3) – Certification as an Expert Agent Advisor** – An individual who is designated on a *Designation of Expert Agent Advisor* form by at least one General Certified Agent may be granted certification by the MLBPA as an Expert Agent Advisor.  An individual granted such certification is authorized thereby to engage in the following conduct:

>> **§2(C)(3)(a)** – representing, assisting or advising a General Certified Agent on behalf of a Player in the functions more fully described in Section 3(A), including in negotiations of terms to be included in a Major League Uniform Player's Contract or of any other agreement or "side letter" concerning terms to be included in any future Major League Uniform Player's Contract, and in representing that Player in dealings with any Major League Baseball Club, or League, the

5

Commissioner's Office, or any person or entity affiliated with them, concerning the administration or enforcement of that Player's Uniform Player's Contract, the Basic Agreement or the Major League Rules.

**§2(C)(3)(b)** – An individual certified as an Expert Agent Advisor is not certified to engage in Recruiting or providing Client Maintenance Services and may not initiate communications with players whom he or she is not assisting on any matter governed by these Regulations. Where there are communications between an Expert Agent Advisor and a player whom he or she is not authorized to assist, the Expert Agent Advisor must notify the MLBPA immediately. The **only** communications that are excepted from these requirements are those lasting no more than a few seconds, which involve no substance (*e.g.,* "Hello, how are you?").

## §2(D) – Definition of "Recruit," "Recruiting" or "Recruitment"

The capitalized terms "**Recruit**," "**Recruiting**" or "**Recruitment**" refer to and include without limitation any direct or indirect communication of any kind with a player, or any person related to or associated with such player, whether such communication is written, oral or electronic (*e.g.,* via e-mail, text message, website, etc.) which, in whole or in part, includes, consists of or relates to:

**§2(D)(1)** – the current or future choice of a Player Agent, Representative or Draft Advisor by a player, a member of the player's family or the player's legal guardian, including without limitation, handing out business cards or promotional literature, or inquiring whether a player is represented or satisfied with his current representation;

**§2(D)(2)** – any effort or attempt to advise, recommend, induce or persuade a player, a member of the player's family or the player's legal guardian, to designate, hire, use the services of, or become a client of any person or firm as Player Agent, Representative or Draft Advisor; or

**§2(D)(3)** – any effort or attempt to advise, recommend, induce or persuade a player, a member of the player's family or the player's legal guardian, to terminate, fire, cease using the services of, or cease being a client of any person or firm as Player Agent, Representative or Draft Advisor.

## §2(E) – Definition of "Client Maintenance Services"

The capitalized term "**Client Maintenance Services**" refers to and includes the performance or provision of any of the following types of services for players:

**§2(E)(1) – Marketing Services** – activities which include, but are not limited to, procuring or negotiating agreements or opportunities for off-field income from endorsements, product licensing, personal appearances, books, movies, television or radio shows, providing autographs, or other uses of a player's name, signature, image or publicity rights, and similar services;

**§2(E)(2) – Concierge Services** – activities which include, but are not limited to, purchasing or providing Baseball Equipment, arranging for or providing training facilities or training services, booking flights or other forms of transportation, arranging for

transportation of vehicles or other personal property, personal shopping services, arranging for housing, obtaining tickets to sporting and entertainment events, and similar services; or

**§2(E)(3) – Legal, Accounting or Financial Services** – activities which include, but are not limited to, legal representation or advice, accounting services or advice, tax advice, preparation of tax returns, financial advice, asset management, bill paying, investment management or advice, and similar services.

## §2(F) – Definition of "Representative"

The capitalized term "**Representative**" means a person who negotiates professional playing contracts on behalf of, or assists or advises, or otherwise represents, one or more baseball players who are not "Players" as defined in Section 2(B). A certified Player Agent, who engages in such conduct, is also a "Representative."

## §2(G) – Definition of "Draft Advisor"

The capitalized term **"Draft Advisor"** means a person who provides advice to one or more amateur baseball players, or such player's parents or legal guardian, in connection with the Major League first-year player draft. A certified Player Agent, who engages in such conduct, is also a "Draft Advisor."

## §2(H) – Definition of "Applicant"

The capitalized term **"Applicant"** means an individual who has completed, signed and filed with the MLBPA an Application for Certification as a Player Agent or Expert Agent Advisor and whose Application is still pending approval or denial by the MLBPA. In those cases where an Applicant is the sole or part owner of, or conducts business as, or is employed by a business entity, the term "Applicant" includes the firm or business entity he or she owns or with which he or she is employed or associated, except where the context clearly provides otherwise.

## §2(I) – Definition of "Restrictive Covenant"

The capitalized term **"Restrictive Covenant"** means any contractual restriction on the working activities of a former employee, independent contractor, partner, shareholder or other former business associate, including without limitation, any

    **§2(I)(1)** – restriction on working as a Player Agent,

    **§2(I)(2)** – restriction on working for a competitor,

    **§2(I)(3)** – restriction on representing or performing services for certain players,

    **§2(I)(4)** – restriction on Recruiting certain players,

    **§2(I)(5)** – restriction on using or disclosing confidential information,

7

**§2(I)(6)** – restriction on soliciting or employing other employees of the former employer,

**§2(I)(7)** – agreement requiring the former employee or associate to share post-termination earnings, pay any money or forfeit any benefit for competing with the former employer or former business associate, or

**§2(I)(8)** – agreement otherwise prohibiting or discouraging any lawful post-termination competition by a former employee or former business associate.

### §2(J) – Definition of "Baseball Equipment"

The capitalized term **"Baseball Equipment"** shall include the following items of a type normally used or worn by players on the field in baseball games or practices:

- shoes and pitching toes,
- fielders' gloves,
- catchers' mitts,
- catchers' equipment,
- bats,
- batting gloves,
- elbow protectors,
- shin/ankle protectors,
- sunglasses,
- wristbands, and
- any other equipment of a type normally used or worn by players in baseball games or practices.

### §2(K) – Definition of "Regulations"

The capitalized term "**Regulations**" means these MLBPA Regulations Governing Player Agents as amended through February 15, 2016, and any subsequent amendments adopted by the MLBPA's Executive Board pursuant to Section 10.

# Section 3 – Conduct Requiring Certification as a Player Agent or Expert Agent Advisor

No person is authorized to engage in, or attempt to engage in, any of the conduct described in either Section 3(A) or 3(B) without first obtaining the appropriate certification from the MLBPA as a Player Agent or Expert Agent Advisor:

### §3(A) – Negotiation, Administration or Enforcement of Player Agreements and Rights

Conducting on behalf of any Player or Player Agent, assisting or advising any Player or any Player Agent with respect to, or otherwise representing any Player or assisting any Player Agent in:

**§3(A)(1)** – negotiations concerning terms to be included in a Major League Uniform Player's Contract, provided that for this purpose "negotiations" do not include participation in salary arbitration;

**§3(A)(2)** – negotiations of any other agreement or "side letter" concerning terms to be included in any future Major League Uniform Player's Contract; or

**§3(A)(3)** – dealings with any Major League Baseball Club, or League, the Commissioner's Office, or any person or entity affiliated with them, concerning the administration or enforcement of a Uniform Player's Contract, the Basic Agreement or the Major League Rules.

### §3(B) – Recruitment or Maintenance of Players as Clients

Recruiting, or providing Client Maintenance Services for, any player on behalf of any Player Agent, **unless**:

**§3(B)(1)** – the person providing Client Maintenance Services does so only on an occasional and incidental basis, such person is primarily engaged in work unrelated to the performance of client maintenance services such as a clerical or secretarial support position, and such person does not Recruit players; or

**§3(B)(2)** – the Client Maintenance Services are provided to a player by a person or firm that does not Recruit players and is independent of and not affiliated with that player's Player Agent or Representative or any person or firm Recruiting that player.

## Section 4 – Certification and Maintenance of Certification for Player Agents and Expert Agent Advisors

To receive certification as a Player Agent, with a General Certification or a Limited Certification, or as an Expert Agent Advisor, an individual first must complete an Application for Certification ("Application"), including a current photograph, and must pay the nonrefundable Application fee. The MLBPA will accept no other form of Application, including one which responds to all questions but is not the online form itself. The Application must be submitted online as set forth on https://registration.mlbpa.org.  In addition, the Applicant must submit a hard copy of the Application's signature page, a copy of the Applicant's current standard representation agreement, and the application fee by regular mail to the MLBPA; the application is not complete until the MLBPA receives all of these items.  The signing and filing of the Application constitute the Applicant's agreement that he or she will comply with and be bound by these Regulations, including the exclusive arbitration remedy set forth in Section 7, and that his or her failure to comply in any material respect with any provision of the Regulations shall constitute grounds for denial, revocation, limitation or suspension of his or her certification or other disciplinary action.

The mere filing of an Application does not constitute certification of the Applicant as a Player Agent or Expert Agent Advisor or authorize the Applicant to engage in any of the conduct described in Section 3(A) or 3(B) of these Regulations.  An Applicant for certification must also take a written test, submit to a background check and receive an appropriate designation in order to be certified.  If the MLBPA certifies

the Applicant as a Player Agent or Expert Agent Advisor, the Applicant will be notified of his or her certification, and only then will he or she be authorized to engage in the conduct for which he or she is granted certification.  In addition, to retain his or her certification, the Player Agent or Expert Agent Advisor must maintain an updated Agent Registration form and pay an annual administrative fee.

### §4(A) – Education, Experience and Knowledge Standards for Certification

**§4(A)(1) – Player Agents** – An Applicant  must demonstrate that he or she possesses the education or relevant professional or employment experience and knowledge to perform competently the functions of a General or Limited Player Agent.  As a result, such an Applicant will be required to pass a written test.  There will be separate tests for General and Limited Certified Agents.  The tests will be open book and will be administered once a year in English and Spanish.

**§4(A)(2)** – After an Applicant has submitted a complete application and successfully completed the background check process, the Applicant will be notified that he or she is eligible to take the written test for the certification sought on the next date it is administered.  An Applicant who has successfully completed the background check shall have two opportunities to take and pass the MLBPA's written test.  The MLBPA will make a preparatory course for the test available.   An Applicant who passes the test for certification as a Limited Certified Agent must also pass the test for General Certified Agent certification before becoming a General Certified Agent.  A Limited Certified Agent does not lose that certification if he or she fails the test to become a General Certified Agent.

**§4(A)(3)** – An Applicant to be a General Certified Agent who completes the background check and passes the written test is not a certified agent until he or she is designated on a *Player Agent Designation* form by at least one Player.  An Applicant to be a Limited Certified Agent who completes the background check and passes the written test is not a certified agent until he or she is designated on a *Designation of Recruiter or Client Maintenance Service Provider* form by a General Certified Agent.  Such Applicants become certified agents if they receive the required designation within three years of passing the written test.  The application of an Applicant who does not receive the required designation within three years expires, and that person must reapply and complete the entire application process again.  An Applicant who fails to take the MLBPA's written test within one year of passing the background investigation shall have his or her application expire and will be required to complete the entire application process again, including the submission of an application fee and successful completion of a background investigation.  An Applicant who fails the test for either certification may retake the test the next time it is offered.  An Applicant who fails the test twice must reapply and complete the entire application process again, and will be eligible to submit a new application no earlier than one year from the date of the second failed test.

**§4(A)(4) – Expert Agent Advisors** – An individual (i) who is a member, partner or employee of a business entity that is not a sports agency and does not include other General or Limited Certified Agents, (ii) who has not been designated on a *Player Agent Designation* form from a Player who satisfies the definition in Section 2(B), and (iii) who has an undergraduate degree from an accredited four-year college or university, and either

a post-graduate degree from an accredited college or university or four or more years of appropriate negotiation experience, is eligible to be certified as an Expert Agent Advisor.

To be certified as an Expert Agent Advisor, an individual is also required to file an application, pay the required fees, submit to a background check, take a written test and fulfill all reporting requirements. An Applicant to be an Expert Agent Advisor who fulfills all of these requirements is not certified until he or she is designated by a General Certified Agent to assist him or her in carrying out the duties of a General Certified Agent on the *Designation of Expert Agent Advisor* form attached to these Regulations as Exhibit A. Such an Applicant becomes an Expert Agent Advisor if he or she receives the required designation within three years of passing the written test. The application of an Applicant who does not receive the required designation within three years expires, and that person must reapply and complete the entire application process again. In addition, an Expert Agent Advisor must promptly notify the MLBPA in writing when beginning or concluding work for a General Certified Agent with respect to a specific Player.

## §4(B) – Only Individuals Can Be Certified

All Applications must be signed by and filed on behalf of a single individual Applicant. The MLBPA will not accept any Application filed by, nor will it certify as a Player Agent or Expert Agent Advisor, any company, partnership, corporation, or other artificial legal entity. Notwithstanding this policy of certifying only individuals, a Player Agent Representation Agreement may be entered into by a Player and an artificial legal entity by which the Player Agent is employed, or with which he or she is affiliated, provided that the Agreement conforms in all respects with the requirements set forth in these Regulations, including in particular Section 6(F), entitled "Representation Agreement in Name of Player Agent's Company." A certified Player Agent or Expert Agent Advisor may be decertified or disciplined for maintaining an affiliation with an Agency or with another person or entity that violates these Regulations.

## §4(C) – Applications for General Certification or Certification as an Expert Agent Advisor

**§4(C)(1)** – A person seeking General Certification by the MLBPA to represent a Player in connection with negotiation, administration or enforcement of Player agreements or rights, as described in Section 3(A), will not receive General Certification unless the Application is accompanied by:

**§4(C)(1)(a)** – at least one current *Player Agent Designation* form (Exhibit B) signed and dated by a Player who satisfies the definition in Section 2(B) designating that Applicant, and

**§4(C)(1)(b)** – a copy of the form of Player Agent Representation Agreement with which the Applicant proposes to contract with prospective Player clients.

**§4(C)(2)** – The MLBPA, in its sole discretion, may require a person seeking General Certification who has not previously been certified to represent a Player in connection with the negotiation, administration or enforcement of Player agreements or rights, as described in Section 3(A), to enter into an agreement with an experienced General Certified Agent,

11

Expert Agent Advisor or other person with the relevant expertise, as determined and approved by the MLBPA, to assist him or her in connection with initial representations of Players.

**§4(C)(3)** – A person seeking certification as an Expert Agent Advisor as described in Section 4(A)(4) will not receive such certification unless the Application is accompanied by at least one current *Designation of Expert Agent Advisor* form (Exhibit A), signed and dated by a General Certified Agent, designating that Applicant to assist him or her with respect to a Player who satisfies the definition in Section 2(B).

**§4(C)(4)** – Every *Designation of Expert Agent Advisor* must be in the form attached to these regulations as Exhibit A.  Every *Player Agent Designation* must be in the form attached to these Regulations as Exhibit B, and must be completed in full.  If the principal language of the Player is not English, the Player must sign and date both a *Player Agent Designation* form in English and an accurate translation of the English form in the Player's principal language.  Both the English version and the translation shall be filed with the MLBPA.  No other form of designation, including one which transposes the language of Exhibit A or Exhibit B onto other stationery, will be accepted by the MLBPA.  A Player or General Certified Agent may designate more than one person as a Player Agent or Expert Agent Advisor, respectively, on a single Designation form, including persons employed by or affiliated with more than one firm.

## §4(D) – Applications for Limited Certification Only to Recruit or Provide Client Maintenance Services

The Application of a person seeking Limited Certification only to Recruit or to provide Client Maintenance Services, as described in Section 3(B), must be accompanied by at least one current *Designation of Recruiter or Client Maintenance Services Provider* form, signed and dated by a Player Agent who has been granted General Certification or an Applicant who has applied for General Certification, designating the Applicant for Limited Certification as a Recruiter or Client Maintenance Services Provider on behalf of that Player Agent or Applicant.  A *Designation of Recruiter or Client Maintenance Services Provider* form is valid until revoked in writing by the Player Agent or Applicant who signed it.  Every *Designation of Recruiter or Client Maintenance Services Provider* must be in the form attached to these Regulations as Exhibit C and must be completed in full.  No other form of designation, including one which transposes the language of Exhibit C onto other stationery, will be accepted by the MLBPA.  More than one person may be designated on a single Designation form and more than one Player Agent with General Certification or Applicant for General Certification may sign a single form designating the same person(s) as Recruiter(s) or Client Maintenance Service provider(s).

## §4(E) – Temporary Limited Certification

**§4(E)(1)** – Notwithstanding any other provision of these Regulations, the MLBPA may, upon request, in its sole and unreviewable discretion, grant a Temporary Limited Certification, as a privilege and not a right, for a period of up to six months:

**§4(E)(1)(a)** – To a person who has filed a complete Application seeking Limited Certification; or

**§4(E)(1)(b)** – To a person who is or is about to be employed or otherwise retained by a Player Agent on a temporary basis (*e.g.*, summer interns).

**§4(E)(2)** – The MLBPA will not grant Temporary Limited Certification where doing so would result in the circumvention of the certification requirements of these regulations.

**§4(E)(3)** – An individual may file a written request with the MLBPA for a Temporary Limited Certification authorizing the individual on a temporary basis to engage in certain Recruiting or Client Maintenance Service conduct which otherwise requires certification under Section 3(B). The individual's written request shall provide identification and contact information about the individual making the request, the conduct for which authorization is sought (*e.g.,* Recruiting or Client Maintenance Services), the reasons that a Temporary Limited Certification is needed, and must include the required application fee. The MLBPA shall review the request and shall provide electronic notice to the individual granting or denying a Temporary Limited Certification. If the request is granted, the notice shall specify the conduct authorized by the Temporary Limited Certification, the duration of the Temporary Limited Certification, and, if appropriate, a date by which the individual's Application for Limited Certification must be filed, if not already on file.

**§4(E)(4)** – The MLBPA may deny or impose conditions or limitations upon, or suspend, withdraw or revoke a Temporary Limited Certification at any time in its sole and unreviewable discretion. Any decision by the MLBPA concerning a Temporary Limited Certification, including any denial, suspension, extension, withdrawal or revocation of, or the imposition of any conditions or limitations on a Temporary Limited Certification, is neither discipline nor subject to appeal.

**§4(E)(5)** – The MLBPA in its sole and unreviewable discretion may award an Applicant one six-month extension of his or her Temporary Limited Certification if he or she fails to pass the competency test and signs up to take the next test. An Applicant who fails the competency test twice may not submit a new application for one year.


## §4(F) – Certification to Represent Additional Players

An individual who has been granted a General Certification to represent one or more Players, as described in Section 3(A), and who wishes to represent one or more additional Player(s) must also be certified to the Major League Clubs by the MLBPA to do so, but need not file an Application in order to represent the additional Player(s), unless he or she is in inactive status under Section 4(J). He or she need only file with the MLBPA for each additional Player a completed, current *Player Agent Designation* form designating him or her, signed and dated by the additional Player. Likewise, an individual who has been certified as an Expert Agent Advisor to assist one or more General Certified Agents need not file an Application in order to assist other General Certified Agents, unless he or she is in inactive status under Section 4(J). He or she need only file with the MLBPA for each additional General Certified Agent a completed current *Designation of Expert Agent Advisor* form designating him or her, signed and dated by the additional General Agent, and fulfill the requirement in Section 4(A)(4) that he or she promptly notify the MLBPA when beginning to provide and ceasing to provide assistance on behalf of a specific Player.

### §4(G) – Filing An Application For Certification

All applications to be certified as a Player Agent (including any application for Temporary Limited Certification) or an Expert Agent Advisor and accompanying documents are to be submitted to the MLBPA by utilizing the online Application for Certification available at https://registration.mlbpa.org.  Documents to be submitted along with the Application (*e.g.*, *Player Agent Designation* forms, Player Agent Representation Agreements, *Designation of Recruiter or Client Maintenance Services Provider* forms, and *Designation of Expert Agent Advisor* forms) may be scanned and filed in .PDF format in accordance with the online instructions.  Any documents which must be submitted by regular mail (such as the signature page of all Applications to be a Player Agent or Expert Agent Advisor) and all required fees must be submitted to the MLBPA at the following address:

> Major League Baseball Players Association
> ATTENTION: Player Agent Certification
> 12 East 49th Street, 24th Floor
> New York, NY  10017

Applications are not complete until the signature pages and fees are received by the MLBPA.  The MLBPA does not accept electronic signatures.


### §4(H) – Player Agent and Expert Agent Advisor Application Fee; Annual Updates and Other Fees

**§4(H)(1)** –Applications for General Certification under Section 4(C), for Limited Certification under Section 4(D), or for certification as an Expert Agent Advisor under Section 4(A)(4), must be accompanied by an Application fee as specified in Addendum A.

**§4(H)(2)** – After an Agent or Expert Agent Advisor is certified, his or her application form becomes the Registration form.  All General and Limited Certified agents and Expert Agent Advisors must immediately update their Registration forms if there is any change in the Registration form that has been submitted to the MLBPA.  This update may be made online by accessing https://registration.mlbpa.org.  Failure to update the Registration form in a reasonable period of time will subject the Agent or Advisor to a fine as specified in Addendum A.

**§4(H)(3)** – By no later than July 15 of each calendar year, General and Limited Certified Agents and Expert Agent Advisors must inform the MLBPA that there have been either no changes in the responses on their Registration forms or no changes other than those previously reported under Section 4(H)(2).  This report may be made online by accessing https://registration.mlbpa.org. By no later than July 15 of each calendar year, all General and Limited Certified Agents and Expert Agent Advisors shall submit to the MLBPA an annual registration renewal fee.  The amount is specified in Addendum A.

**§4(H)(4)** – Failure to comply with the reporting and other requirements in Sections 4(H)(2) and (3) in a timely fashion may result in a fine as specified in Addendum A.  An Agent or Expert Advisor who fails to update his or her Registration in a calendar year and who fails to pay the annual fee will be notified of such failure by the MLBPA and given a

reasonable time to comply.  If the Agent or Expert Advisor fails to comply in the time allowed, he or she will be notified and deemed to have relinquished certification.

**§4(H)(5)** – A General Certified Agent who ceases to have a current *Player Agent Designation* from a Player who satisfies the definition in Section 2(B) and a Certified Expert Agent Advisor who ceases to be designated by a General Certified Agent, may remain certified by complying with the reporting requirements set forth above and paying the annual fee for updating his or her Registration form for three years.  As more fully described in Section 4(J), following three years without the appropriate designation, the General Certified Agent or Expert Agent Advisor will be notified that his or her certification will be deemed relinquished, and he or she will be in inactive status.  To become certified again, the Agent or Expert Agent Advisor must reapply as set forth in Section 4, except that he or she is not required to retake the written test unless four or more years have passed since the Agent or Expert Agent Advisor was designated on a *Player Agent Designation* form or *Designation as Expert Agent Advisor* form, as appropriate.  A Temporary Limited Certified Agent who ceases to have a Designation from a General Certified Agent immediately loses his or her temporary Certification.

**§4(H)(6)** – All information on Applications and Registration Forms must be complete and accurate.  The failure to provide complete and accurate information on these documents is grounds for rejection of an application or the withdrawal or suspension of certification or other disciplinary action.  Applicants and current Agents and Advisors must answer all questions and must cooperate with requests from the MLBPA or its agents for additional information or clarification.  Failure to cooperate with such requests and interference with the MLBPA's review and investigation process is grounds for rejection of the application or the withdrawal or suspension of certification or other disciplinary action.  Any dispute between an Applicant and the MLBPA or a current Agent or Advisor and the MLBPA about whether the Applicant, Agent or Advisor must provide documents, testimony or other information to the MLBPA, including without limitation any claim of privilege with respect to such documents, testimony or information, is subject to exclusive arbitration under Section 7(B).

## §4(I) – Application Review; Background Check; Additional Information

**§4(I)(1)** – In its review and consideration of an Application, the MLBPA  or an outside firm will conduct a background check of the Applicant.  The background check will focus on conduct which is relevant to the Applicant's fiduciary duties as an Agent and Advisor and additional responsibilities as a person to whom the MLBPA will have delegated certain authority to bargain on behalf of players.  In order to have his or her Application considered, the Applicant will be required to consent in writing to a background check, to cooperate fully with that process and to authorize the MLBPA in its sole discretion to disclose the information to players whom the Applicant represents or seeks to represent.  Failure to consent to or cooperate fully with the background check and its use is grounds for rejection of an Application.

**§4(I)(2)** – In its review and consideration of any Application, the MLBPA or its outside firm may request the Applicant to provide additional information, documents or materials, or may conduct whatever additional investigation it deems appropriate, including requiring

15

a conference with the Applicant by telephone or in person or providing the Applicant with an opportunity to respond to negative information.  See Section 4(N).

**§4(I)(3)** – As set forth in Section 4(N), an Applicant who is denied certification based on a background check will receive notice and will have an opportunity to respond in writing to the information in the background check report.  If the Applicant is denied certification based on the information in a background check report, he or she may appeal that decision solely to exclusive arbitration under Section 7(B).

## §4(J) – Inactive Player Agents and Expert Agent Advisors

The MLBPA shall take the following action with respect to Player Agents who have not had a current *Player Agent Designation* or current *Designation of Recruiter or Client Maintenance Services Provider* as described in Sections 4(J)(1) and 4(J)(2), Temporary Limited Certified Agents who do not have a current *Designation of Recruiter or Client Maintenance Services Provider* form as described in Section 4(J)(3), and Expert Agent Advisors who have not had a current *Designation of Expert Agent Advisor* as described in Section 4(J)(4):

**§4(J)(1)** – Any Player Agent with a General Certification, as described in Section 2(C)(1), who, in the immediately preceding three years, has not had a current *Player Agent Designation* form signed by a Player and filed with the MLBPA, shall be notified by the MLBPA that he or she will be placed in inactive status.  A Player Agent so notified may avoid placement in inactive status by providing evidence within thirty (30) days of receiving such notice demonstrating to the MLBPA's satisfaction that he or she has had a current *Player Agent Designation* from a Player who satisfies the definition in Section 2(B) within the preceding three years.

**§4(J)(2)** – Any Player Agent with a Limited Certification, as described in Section 2(C)(2), who, in the immediately preceding ninety (90) days, has not had a current *Designation of Recruiter or Client Maintenance Services Provider* form signed by a Player Agent with General Certification and filed with the MLBPA, shall be notified by the MLBPA that he or she will be placed in inactive status.  A Player Agent so notified may avoid placement in inactive status by providing evidence within thirty (30) days of receiving such notice demonstrating to the MLBPA's satisfaction that he or she has had a current *Designation of Recruiter or Client Maintenance Services Provider* form from a Player Agent with General Certification within the preceding ninety (90) days.

**§4(J)(3)** – Any Player Agent with a Temporary Limited Certification who ceases to be designated on a *Designation of Recruiter or Client Maintenance Service Provider* form signed by a Player Agent with, or Applicant for, General Certification and filed with the MLBPA, immediately loses his or her Temporary Limited Certification.  A Temporary Certified Agent may avoid losing his or her Temporary Certification only by immediately demonstrating to the MLBPA's satisfaction that he or she has in fact continuously possessed the required designation.

**§4(J)(4)** – An Expert Agent Advisor who, in the immediately preceding three years, has not had a current designation by a General Certified Agent to assist with representation of a Player who satisfies the definition in Section 2(B) shall be notified by the MLBPA that he or she will be placed in inactive status.  An Expert Agent Advisor so notified may avoid

placement in inactive status by providing evidence within thirty (30) days of receiving such notice demonstrating to the MLBPA's satisfaction that he or she has had a current *Designation of Expert Agent Advisor* form on behalf of a General Certified Agent within the preceding three years.

**§4(J)(5)** – A Player Agent in inactive status who receives a *Player Designation* from a Player as defined in Section 2(B) or a *Designation of Recruiter or Provider of Client Maintenance Services* form from a General Certified Agent, or an Expert Agent Advisor in inactive status who receives a *Designation of Expert Agent Advisor* from a General Certified Agent must reapply for certification and satisfy the Application and certification requirements for new applicants except that he or she is not required to take the written test unless four or more years have passed since the Player Agent or Expert Agent Advisor was properly designated by a Player or a General Certified Agent, as appropriate.

## §4(K) – Disclaimer

The MLBPA's granting of certification as a Player Agent or Expert Agent Advisor is not intended to, and does not constitute, employment or retention of any Player Agent or Advisor by the MLBPA as an employee or agent of the MLBPA, nor is it intended to, nor does it establish, any partnership or joint venture between the MLBPA and any Player Agent or Advisor.  In addition, the MLBPA's granting of certification as a Player Agent or Advisor is not intended to be and does not constitute any guarantee, warranty or endorsement by the MLBPA of the quality of any Player Agent's or Advisor's performance.  In no event shall the MLBPA's granting of certification as a Player Agent or Advisor be deemed to impose upon the MLBPA, its Executive Board or any of its committees, officers, representatives, members, consultants, employees or agents, any liability for any conduct or act of commission or omission by any certified Player Agent or Advisor in providing representation or any other service to or for any Player.

## §4(L) – Relations Among Player Agents, Applicants, and their Employees, Contractors and Other Business Associates

Due to the different and sometimes inconsistent laws and regulations of the various jurisdictions governing employment and business relationships (*e.g.,* the duty of loyalty owed by employees to their employers and the enforceability of post-employment Restrictive Covenants, etc.), it is necessary to exercise the MLBPA's authority under Federal labor laws to establish uniform and consistent regulations that apply to relations among Player Agents or Applicants and their employees, independent contractors, business associates, Agencies and affiliated persons and entities.  For purposes of these Regulations, an Agency and a person or entity affiliated with an Agent or Agency includes, among others, shareholders and investors.

**§4(L)(1) – Duty of Loyalty** – Notwithstanding any State or local law or regulation to the contrary, each employee of a Player Agent or Applicant owes a fiduciary duty to act loyally for the employer's benefit in all matters connected with the employment relationship.  This duty of loyalty exists even in the absence of any formal employment agreement.  An employee of a Player Agent or Applicant breaches this duty of loyalty by:

**§4(L)(1)(a)** – Competing with the employer while employed by the employer, including without limitation, Recruiting for his or her own present or future self-

17

interest or for any other Player Agent or other competitor of the employer, or using work time or the employer's facilities or equipment to prepare to become a competitor of the employer; or

**§4(L)(1)(b)** – Making unauthorized use or disclosure of the employer's confidential information to serve other than the employer's interest, whether before or after termination of the employment relationship.

A similar duty of loyalty also applies to the partners and other business associates of Player Agents and Applicants, including independent contractors, in all matters connected with their business relationship involving representation of players, except to the extent they may have specifically provided otherwise by agreement.

The arbitration process of Section 7 shall be the exclusive method of resolving all disputes between or among Player Agents, Expert Agent Advisors or Applicants and other Player Agents, Expert Agent Advisors or Applicants that relate to the validity, application, interpretation, breach or enforcement of the duty of loyalty.

**§4(L)(2) – Enforceability of Restrictive Covenants** – Notwithstanding any State or local law or regulation to the contrary, any Restrictive Covenant in any agreement between a Player Agent or Applicant and another Player Agent, employee, independent contractor, partner, shareholder or other business associate is enforceable only if:

**§4(L)(2)(a)** – The Restrictive Covenant is included in a written agreement, supported by consideration, and executed by both parties;

**§4(L)(2)(b)** – A copy of the Restrictive Covenant's terms and the name of the employee or business associate subject to the Restrictive Covenant have been disclosed in writing to the MLBPA by an authorized representative of the party who may seek to enforce the Restrictive Covenant within 90 days of signing it;

**§4(L)(2)(c)** – The written agreement containing the Restrictive Covenant includes a separate paragraph which provides as follows:

> All disputes between or among *[insert names of the parties to the Restrictive Covenant]* involving the validity, interpretation, application, enforcement or alleged breach of *[insert a reference to the provisions of the agreement containing the Restrictive Covenant]* of this agreement shall be resolved exclusively in accordance with the final and binding arbitration procedures set forth in Section 7(A) of the MLBPA's Regulations Governing Player Agents. This paragraph supersedes any provision in this or any other agreement between or among *[insert names of parties to the Restrictive Covenant]* that is or may appear to be in conflict with this paragraph;

**§4(L)(2)(d)** – The party seeking enforcement of the Restrictive Covenant has not breached the underlying agreement governing the relationship between the parties, nor acted in bad faith in requiring or invoking the Restrictive Covenant so that its

enforcement would be inequitable (*e.g.,* by discharging an employee without cause simply to invoke a Restrictive Covenant); and

**§4(L)(2)(e)** – Its restrictions on the former employee, business associate or independent contractor, examined individually under the facts and circumstances, are reasonable.  The party seeking to enforce the restriction shall have the burden of proving its reasonableness.  In determining whether each restriction meets this standard of reasonableness, the following factors, among others, shall be taken into consideration:

> **§4(L)(2)(e)(i)** – Whether the geographical scope of the restriction is limited to an area no larger than is reasonably necessary to protect the legitimate business interest it is designed to protect;

> **§4(L)(2)(e)(ii)** – Whether the duration of the restriction is limited to a period of time no longer than is reasonably necessary to protect the legitimate business interest it is designed to protect;

> **§4(L)(2)(e)(iii)** – Whether any restriction on Recruiting, representing or performing services for certain players is limited in scope to include only those players with whom the party seeking enforcement has a relationship sufficient to justify the restriction;

> **§4(L)(2)(e)(iv)** – Whether any provision requiring a former employee, associate or independent contractor to share post-termination earnings, or to pay any money or forfeit any benefit for competing with the former employer or business associate or for breaching a Restrictive Covenant, is limited in both duration and amount to what is reasonably necessary, under the particular facts and circumstances, to fairly compensate the party seeking enforcement of that provision.

**§4(L)(3) – Required Consent to MLBPA Jurisdiction Over Disputes** – A Certified Agent may not be employed by or affiliated with an Agency, person, or entity unless such Agency, person, or entity complies with the MLBPA's regulations and consents to the MLBPA's jurisdiction over:

> (i)     any dispute between a Player Agent or Applicant and that Agency, person or entity that relates to the representation or Recruitment of Players or the validity, application, interpretation, breach or enforcement of the duty of loyalty described in Section 4(L)(1) or any Restrictive Covenant;

> (ii)    any dispute between a Player and that Agency, person or entity as described in Section 7(A) of these Regulations; and

> (iii)   any dispute arising between the MLBPA and that Agency, person, or entity as described in Section 7(B) of these Regulations.

19

**§4(L)(4) – Temporary Determinations by MLBPA** – In any dispute between Player Agents, Expert Agent Advisors or Applicants involving interpretation, application, enforcement or alleged breach of the duty of loyalty or a Restrictive Covenant, the MLBPA may determine, on a temporary basis, the rights of the parties and any affected players, including any issues of player representation or certification, in order to protect the interests of the parties and any affected players until the matter can be resolved by the exclusive arbitration process of Section 7.  Where reasonably possible, before making such a temporary determination, the MLBPA shall provide both notice and the opportunity to submit a written statement of position to all parties to the dispute.  In addition, where the MLBPA has made such a temporary determination, it shall to the extent reasonably possible seek to expedite the proceeding under Section 7.

## §4(M) – Denial of Certification; Limits and Conditions on Certification

It is the MLBPA's intention to certify as Player Agents and Expert Agent Advisors only those persons who, in its judgment, can reasonably be expected to carry out faithfully their important fiduciary and other responsibilities.  Consistent with this objective, the MLBPA may deny certification as a Player Agent or Expert Agent Advisor to any Applicant, or may impose limits or conditions on the certification granted to any Applicant, including but not limited to requiring the Applicant to obtain assistance from an experienced General Certified Agent, Expert Agent Advisor or other person with relevant expertise, as determined and approved by the MLBPA, to assist him or her in connection with representations of players, on any of the following grounds:

**§4(M)(1)** – the Applicant has not filed an Application which is complete by the deadline the MLBPA establishes and in conformity with these Regulations or the Applicant has failed in any material way to provide the information requested in the Application by the deadline the MLBPA establishes;

**§4(M)(2)** – the Applicant has failed to cooperate with the MLBPA in its processing of his or her Application, including without limitation, failing or refusing to supply additional information, documents or materials that the MLBPA or any third party retained by the MLBPA to assist in processing the Application may request, or to participate in a conference with the MLBPA or its agents by telephone or in person, upon request;

**§4(M)(3)** – the Applicant has made any misrepresentation or any false or misleading statement or omission of a material nature in the Application, the MLBPA's processing of the Application or the MLBPA's or its agents' investigation of the Applicant;

**§4(M)(4)** – the Applicant has failed to pass the written test or, in the reasonable judgment of the MLBPA, has otherwise demonstrated that he or she lacks the minimum educational or experience background, knowledge, competence, credibility or integrity to be certified;

**§4(M)(5)** – the Applicant has engaged in conduct (including conduct that violates the duty of loyalty an employee owes to the employer, or conduct that creates an actual or potential conflict of interest, or the appearance of such a conflict) which, in the MLBPA's reasonable judgment, is likely to impair the Applicant's ability to provide single-minded, honest, competent, loyal and zealous representation of or advice to players;

**§4(M)(6)** – the Applicant has engaged in conduct which, in the MLBPA's reasonable judgment, renders the Applicant unfit to be certified, including, but not limited to, misappropriation or embezzlement of funds, theft, fraud, deceit, breach of a fiduciary duty, antiunion activities such as crossing a picket line or strikebreaking, or an offer or promise of improper inducements to a player or any person related to or associated with a player;

**§4(M)(7)** – the Applicant has engaged in any of the conduct requiring General Certification as a Player Agent for a Player, as described in Sections 2(C)(1) and 3(A), without first being designated by such Player on a current *Player Agent Designation* form filed with the MLBPA, and being certified by the MLBPA to engage in such conduct on behalf of such Player;

**§4(M)(8)** – the Applicant has engaged in any of the conduct requiring Limited Certification as a Player Agent, as described in Sections 2(C)(2) and 3(B), without first being designated by a Player Agent with General Certification, or an Applicant seeking General Certification, on a current *Designation of Recruiter or Client Maintenance Services Provider* form filed with the MLBPA, and being certified by the MLBPA to engage in such conduct; or

**§4(M)(9)** – the Applicant has engaged in any of the conduct requiring certification as an Expert Agent Advisor, without first being designated by a Player Agent with General Certification, or an Applicant seeking General Certification, on a current *Designation of Expert Agent Advisor* form filed with the MLBPA, and being certified by the MLBPA to engage in such conduct; or

**§4(M)(10)** – the Applicant has engaged in any other conduct which, in the MLBPA's reasonable judgment, may adversely affect the Applicant's credibility, integrity or competence to serve as a representative, advisor or fiduciary on behalf of Players.

## §4(N) – Application Processing; Notice of Certification; Notice of Successful Completion of Application; Notice of Denial of or Limitations on Certification; Right to Appeal

**§4(N)(1)** – Every complete application filed with the MLBPA shall receive a case number.

**§4(N)(2)** – The MLBPA shall notify an Applicant electronically that he or she has been certified.

**§4(N)(3) –** The MLBPA shall notify an Applicant who has successfully completed all aspects of the application process, including the written test, but who (i) does not currently represent a Player who satisfies the definition in section 2(B), or (ii) in the case of an Applicant to be an Expert Agent Advisor or a Limited Certification Agent, does not currently have a Designation from a General Certified Agent, that he or she has successfully completed the application process, but that his or her certification remains pending until the MLBPA receives, as appropriate, a *Player Agent Designation* form, designating the Applicant as agent, and signed by a Player who satisfies the definition in section 2(B), or a *Designation of Expert Agent Advisor* form or a *Designation of Recruiter or Client Maintenance Services Provider* form signed by a General Certified Agent. In subsequent calendar years in which such an Applicant still does not have the required

Designation, he or she must update his or her Registration as set forth in Section 4(H).  If after three years following the successful completion of the application process the Applicant has not obtained the required Designation, the Applicant's application will expire and he or she will be required to reapply and complete the entire application process.

**§4(N)(4)** – If an application raises legal or factual questions that must be resolved before the certification decision, the application will be referred to the MLBPA's Assistant General Counsel for Agent Regulation for review.  In its sole, unreviewable discretion, the MLBPA may decide to use an outside person or agency to conduct or assist in conducting such a review.  The Assistant General Counsel or his or her designee will review the application, the background check, and other publicly available information.  Where the review reveals information that suggests that the application may be denied, the Assistant General Counsel or his or her designee will contact the Applicant and seek additional relevant information and provide him or her with an opportunity to respond in writing.  The Assistant General Counsel for Agent Regulation, after consultation with the designee, if any, will provide relevant information and a recommendation to the Agent Regulation Review Committee.

**§4(N)(5)** – The Committee, after considering the Assistant General Counsel's recommendation and the record, will make a recommendation to the Executive Director. The Executive Director, after consultation with the General Counsel and other counsel as he or she deems appropriate, will decide to adopt or reject the Review Committee's recommendation or to return the matter to the Assistant General Counsel for Agent Regulation for further factual or legal consideration.

**§4(N)(6)** – The MLBPA shall provide an Applicant with electronic notice of any decision to deny his or her certification or to impose limits or conditions on the certification granted. The notice shall set forth the action taken, a brief statement of the factual basis for the action taken and the relevant provisions of the Regulations involved in the action taken.

**§4(N)(7)** – Any dispute between an Applicant and the MLBPA related to the application and Certification process, including without limitation any dispute about whether the Applicant, Agent or Advisor must provide documents, testimony or other information to the MLBPA or about whether such documents, testimony or information are privileged, is subject exclusively to arbitration under Section 7(B).  In addition, any Applicant aggrieved with the action taken by the MLBPA may appeal exclusively to arbitration under Section 7(B).

**§4(N)(8)** – After any dispute related to certification by the MLBPA is concluded, the MLBPA in its sole, unreviewable discretion may make its decision resolving the dispute public; it may also provide notice of the resolution of that dispute to all Players who have a *Player Agent Designation* form with the Applicant and to any General Certified Agent who has designated the Applicant as an Expert Agent Advisor or Limited Certified Agent. The MLBPA may also notify other Players who may be affected, other certified Player Agents or the Office of the Commissioner of Baseball.

## §4(O) – Revocation or Suspension of Certification; Other Discipline

**§4(O)(1)** – At any time after granting certification, the MLBPA may revoke or suspend a Player Agent's or Expert Agent Advisor's certification or take other disciplinary action against a Player Agent or Expert Agent Advisor on the basis of any of the following:

**§4(O)(1)(a)** – any ground that would have provided a basis for denying certification or imposing limits or conditions on the certification granted in the first instance; or

**§4(O)(1)(b)** – failing to comply with, or engaging in conduct in violation of, any provision of the Standards of Conduct set forth in Section 5.

**§4(O)(2)** – The other disciplinary actions the MLBPA may take against a Player Agent, Expert Agent Advisor or Applicant include, but are not limited to, imposing limitations or conditions on his or her authority to represent certain Players or to deal with certain Clubs or to perform certain services on behalf of Players, requiring restitution to players or other parties for any damages or losses he or she has wrongfully caused, written reprimands or warnings, and other forms of discipline.

## §4(P) – Notice of Discipline; Right to Appeal

**§4(P)(1)** – A signed complaint alleging a violation of the MLBPA's Agent Regulations shall receive a case number. In addition, in its sole, unreviewable discretion, the MLBPA may decide to initiate the investigation of an Agent or Expert Agent Advisor. If the MLBPA's investigation discovers facts that demonstrate that its Regulations may have been violated, it shall assign a case number to its investigation. In its sole, unreviewable discretion, the MLBPA may decide to use an outside person or agency to investigate complaints, including but not limited to allegations by other Agents, Players or in press reports, that an Agent or Expert Agent Advisor has engaged in misconduct.

**§4(P)(2)** – A complaint or investigation that raises legal or factual questions concerning a violation of the Regulations will be referred to the MLBPA's Assistant General Counsel for Agent Regulation. The Assistant General Counsel or his or her designee will examine the matter, determine whether there is a potential violation of the Regulations, and conduct an investigation if warranted. An Agent or Expert Agent Advisor who is the target of a complaint or an inquiry that the MLBPA determines warrants investigation will be notified, provided with the name of the person or persons making the allegations and a summary of the misconduct alleged, and given an opportunity to respond in writing to the allegations made. Where appropriate, the Assistant General Counsel or a designee may also contact the complainant and other persons to seek relevant information and/or legal argument. Any Agent or Expert Agent Advisor who interferes with or impedes an investigation, who misuses the investigation process (including by making frivolous allegations), or who fails to cooperate with any investigation by the MLBPA or its designee may be found in violation of these Regulations.

**§4(P)(3)** – The Assistant General Counsel for Agent Regulation, after consultation with the MLBPA's designee, if any, will provide relevant information and a recommendation to the Agent Regulation Review Committee. The Committee, after considering the

23

Assistant General Counsel's recommendation and the record, will make a recommendation to the Executive Director.  The Executive Director, after consultation with the General Counsel and other counsel as he or she deems appropriate, will decide to adopt or reject the Review Committee's recommendation or to return the matter to the Assistant General Counsel for Agent Regulation for further factual or legal consideration.

**§4(P)(4)** – The MLBPA shall provide a Player Agent, Applicant or Expert Agent Advisor with electronic notice of any decision to take disciplinary action against him or her.  The notice shall set forth the action taken, and include a brief statement of the factual basis for the action and the relevant provisions of the Regulations.

**§4(P)(5)** – Any dispute between an Applicant and the MLBPA or a Player Agent or Expert Advisor and the MLBPA related to disciplinary action, including without limitation any dispute about whether the Applicant, Agent or Advisor must provide documents, testimony or other information to the MLBPA or about whether such documents, testimony or information are privileged, is exclusively subject to arbitration under Section 7(B).  Any Applicant, Agent or Advisor aggrieved by disciplinary action taken by the MLBPA may appeal exclusively to arbitration under Section 7(B).

**§4(P)(6)** – After any MLBPA action against a Player Agent, Expert Agent Advisor or Applicant is final, the MLBPA in its sole, unreviewable discretion may make its action public; it may also provide notice of the discipline to all Players who have a current *Player Agent Designation* form with such General Certified or Limited Certified Agent found to have engaged in misconduct or who have been assisted by any Expert Agent Advisor found to have engaged in misconduct.  The MLBPA may also in its sole, unreviewable discretion notify other Players who may be affected, other certified Player Agents or the Office of the Commissioner of Baseball.

# Section 5 – Standards of Conduct for Player Agents, Expert Agent Advisors and Applicants

## §5(A) – Requirements for Applicants, Player Agents and Expert Agent Advisors

All Applicants seeking, and all Player Agents and Expert Agent Advisors granted, Certification are required:

**§5(A)(1) – Provide and Update Required Information** – To provide to the MLBPA all information required by the Application and the annual Registration updates required by Section 4(H) and, in addition, to amend or supplement in writing the information on file with the MLBPA in accordance with Section 4(H);

**§5(A)(2) – Agree to Dissemination of Agent and Advisor Information** – To agree, by signing and submitting the Application and Registration, that the information provided may be shared by the MLBPA with any player and, in addition, may be used by the MLBPA as it deems necessary in the performance of its representational duties, including publishing basic biographical, educational, professional, contact and similar information in a Player Agent and Expert Agent Advisor Directory and informing players

of the individual's certification status and any disciplinary or punitive action taken against the individual;

**§5(A)(3) – Provide Copies of Application or Registration to Players Upon Request** – To provide, upon request, a copy of his or her most recent Application or Registration to any player he or she represents, assists or Recruits, and to inform each player, before the player signs any *Player Agent Designation* form or otherwise agrees to become a client or advisee of the Player Agent, of the right at any time to request and obtain a copy of the most recent Application or Registration;

**§5(A)(4) – Provide Annual Fee Statements to Players** – On or before March 1 of each year, to provide each Player who, during the immediately previous calendar year, paid the Player Agent any fees or reimbursed any expenses of the Player Agent, a fully completed copy of the Fee Statement form attached to these Regulations as Exhibit F. The Fee Statement shall cover the period January 1 through December 31 of the immediately previous year and a copy of it shall be provided to the MLBPA upon its transmission to each Player. A single Fee Statement form may be provided for a Player's fees or expenses paid to all Player Agents employed by or associated with the same business entity, but each Fee Statement must include any fees and expenses paid by only one Player;

**§5(A)(5) – Attend Mandatory Meetings** – To attend any seminars or meetings designated by the MLBPA as mandatory for that Player Agent or Expert Agent Advisor. The MLBPA may designate seminars and meetings as mandatory for all Player Agents and Expert Agent Advisors or for any category or group of Player Agents (*e.g.,* only those with General Certification, or only those with salary arbitration eligible clients), or may require that at least one representative from every Agency attend certain seminars and meetings;

**§5(A)(6) – Comply with Fee Limitations** – To comply with the Regulations' fee disclosure requirements and limitations on Player Agent fees (see Sections 6(C) and 6(I));

**§5(A)(7) – Provide Copy of Representation Agreement to Player and the MLBPA** – To provide each Player whom the Player Agent represents, or whom an Applicant seeks to represent, an executed copy of his Player Agent Representation Agreement, including any required translation of the Agreement, and to timely provide the MLBPA with an executed copy of each such Agreement and translation;

**§5(A)(8) – Allow Independent Audit** – Upon request by a former or current Player client, or by the MLBPA, to allow a professional auditor or certified public accountant designated by the Player or the MLBPA to conduct an independent review or audit of all relevant books and records relating to any services provided to that Player;

**§5(A)(9) – Transfer Records of Players** – Upon request by a player, or by the MLBPA, to transfer to that player or his designee all documents and records in the Player Agent's, Expert Agent Advisor's or Applicant's possession or control relating to that player and deemed by the player or his current Player Agent or other representative to be relevant to the appropriate representation of the player. The original documents and records shall be provided (and, if necessary, copies may be made and retained), except where the Player Agent, Expert Agent Advisor or Applicant is subject to a legal requirement or demonstrates a compelling business reason to retain an original document or record. A Player Agent or

Applicant may not withhold documents or records in order to collect a fee or debt owed by the player;

**§5(A)(10) – Report Violations of Player Rights** – To advise a Player of, and report to the MLBPA, any known or reasonably suspected violations of the Basic Agreement (including any Uniform Player's Contract or any Major League Rule) committed or reasonably suspected to have been committed by any Major League Club or Clubs, or by the Commissioner's Office or any other person or entity affiliated with Major League Baseball;

**§5(A)(11) – Disclose to the MLBPA all Communications with Players Who Are Not Clients** – To provide written disclosure to the MLBPA of any and all communications with any Player(s) whom the Player Agent or Applicant is not designated to represent. Such disclosures shall be provided in all the circumstances more fully described in, and shall include such information as required by, Section 5(B)(8).

**§5(A)(12) – Provide Information to and Cooperate with the MLBPA** – To provide the MLBPA, upon request, with all documents, information and materials the MLBPA deems relevant with respect to any inquiry concerning these Regulations or the Basic Agreement and in all other respects to cooperate fully with the MLBPA in its representation of Players, and to consent to arbitration under Section 7 of any dispute with the MLBPA concerning the production of such documents, information and materials, including any claim of privilege;

**§5(A)(13) – Provide Adequate Supervision of those Working on their Behalf** – To provide a level of supervision of all employees and other persons acting on their behalf or on behalf of their firm, which ensures their compliance with these Regulations and their observance of reasonable standards of care; and

**§5(A)(14) – Comply with All MLBPA Regulations** – To comply with all other provisions of these Regulations.

## §5(B) – Prohibited Conduct; Grounds for Disciplinary Action

The conduct described in Sections 5(B)(1) through 5(B)(22) is, unless provided otherwise in those Sections, strictly prohibited, and may result in the denial of certification to any offending Applicant, or disciplinary action against any offending Player Agent or Expert Agent Advisor or Applicant.

**§5(B)(1) – Acting as Player Agent or Expert Agent Advisor without Certification** – No person shall engage in or attempt to engage in any of the conduct described in Sections 3(A) or 3(B) or provide the assistance described in Section 4(A)(4) unless the person has first obtained the appropriate certification from the MLBPA.

**§5(B)(2) – Unauthorized Representation of Players** – No person shall engage in or attempt to engage in any of the conduct set forth in Section 3(A) or authorized in Section 4(A)(4) on behalf of any Player unless the person first:

**§5(B)(2)(a)** – has been designated on a current, valid and signed *Player Agent Designation* form (Exhibit B to these Regulations) or a current, valid and signed

26

*Designation of Expert Agent Advisor* Form (Exhibit A to these Regulations) filed with the MLBPA; and

**§5(B)(2)(b)** – in the case of a Player Agent, has executed and provided to such Player an executed copy of his current Player Agent Representation Agreement, and, if required, an accurate translation of that Agreement into the Player's principal language.

**§5(B)(3) – Employing or Retaining Unauthorized Recruiter(s) or Provider(s) of Client Maintenance Services** – No Player Agent or Applicant shall employ, retain, compensate or promise to employ, retain or compensate any person for the purpose, in whole or in part, of Recruiting or providing Client Maintenance Services, as more fully described in Section 3(B), unless such person first:

**§5(B)(3)(a)** – has been designated on a current and valid *Designation of Recruiter or Client Maintenance Services Provider* form (Exhibit C attached to these Regulations) signed by a Player Agent with General Certification or an Applicant for General Certification and filed with the MLBPA, as provided in Section 4(D); **and** has obtained the appropriate certification from the MLBPA; **or**

**§5(B)(3)(b)** – has obtained a Temporary Limited Certification from the MLBPA which is still in effect, as provided in Section 4(E).

**§5(B)(4) – Compensating Recruiters or Client Maintenance Services Providers Primarily on Commission** – No Player Agent or Applicant shall, without providing written disclosure to the MLBPA, employ, retain, compensate, or promise to employ, retain or compensate any person for the purpose, in whole or in part, of Recruiting or providing Client Maintenance Services for Players, as more fully described in Section 3(B), pursuant to any arrangement that would allow more than fifty percent (50%) of such person's total compensation for any calendar year to be derived from commissions from Players, or more than twenty-five percent (25%) of such person's total compensation for any calendar year to be derived from commissions from any single Player.

**§5(B)(4)(a)** - The written disclosure required by this Section 5(B)(4) shall provide the following information to the MLBPA:

**§5(B)(4)(a)(i)** – The names of the Player Agent or Applicant and the person being so employed, retained or compensated; and

**§5(B)(4)(a)(ii)** – A description of the compensation arrangement for such person, which includes a breakdown of the percentage of such person's total compensation that may be derived from commissions from Players or from any single Player.

**§5(B)(4)(b)** – If the MLBPA determines, in its reasonable judgment, that the compensation arrangement so disclosed is not in the best interest of Players, it may disallow the arrangement or require that it be modified.

**§5(B)(5) – Improper Inducements** – No Player Agent or Applicant or Expert Agent Advisor shall provide, cause to be provided or promise to provide, any money or any other

thing of value to any player, or any person related to or associated with such player, the purpose of which is to induce or encourage such player to use or continue to use any person's or firm's services as a Player Agent, Expert Agent Advisor, Representative, or Draft Advisor.

**§5(B)(5)(a) – Loans to Professional Player Clients** –Any loans, or promise of loans, of money or any other thing of value by a Player Agent or Applicant to a player, or any persons related to or associated with such player, are prohibited without prior written approval of the MLBPA.  Expert Agent Advisors may not loan money or any other thing of value to a player or any persons related to or associated with a player.

**§5(B)(5)(a)(i)** –  To request approval of a proposed loan, a Player Agent or Applicant must disclose the purpose and terms of the loan in writing to the MLBPA on the form attached to these Regulations as Exhibit D.  The MLBPA will promptly notify the Player Agent or Applicant whether the request has been approved or denied.

**§5(B)(5)(a)(ii)** – A Player Agent or Applicant may only loan or promise to loan money or any other thing of value to a player or to persons related to or associated with a player if the Player Agent or Applicant represents or assists the player at the time of both the promise and the making of the loan.  The MLBPA will not approve a loan if this condition is not satisfied.

**§5(B)(5)(a)(iii)** – A Player Agent or Applicant must report to the MLBPA the terms of any third party loans made to players in which he or she has any involvement of any kind, including but not limited to any role in facilitation or arrangement.

**§5(B)(5)(b) – Gifts to Professional Player Clients** – Any gifts or promise of gifts, of money or of any other thing of value with an aggregate value exceeding $500 U.S. in any calendar year, by an Expert Agent Advisor to any single player, or any persons related to or associated with such player, are prohibited. Except as provided in Section 5(B)(5)(e) or Section 5(B)(5)(g)(ii), any gifts or promise of gifts, of money or of any other thing of value with an aggregate value exceeding $500 U.S. in any calendar year, by a Player Agent or Applicant to any single player, or any persons related to or associated with such player, are prohibited **unless**:

**§5(B)(5)(b)(i)** – each gift without regard to its value, is made or promised to a professional player who is represented by the Player Agent or Applicant at the time of both the promise and the making of the gift, or to persons related to or associated with such player;

**§5(B)(5)(b)(ii)** – the purpose and terms of each gift or promise of a gift that individually exceeds $500 in value are disclosed in writing to the MLBPA on the form attached to these Regulations as Exhibit D prior to such gift being promised or made, if practicable, or as soon thereafter as practicable, and in no case more than 48 hours thereafter;

28

**§5(B)(5)(b)(iii)** – when the $500 aggregate value threshold for gifts or promises of gifts to a single professional player in a calendar year has been reached, the purpose and terms of each subsequent individual gift of any value promised or made during the same calendar year are disclosed in writing to the MLBPA on the form attached to these Regulations as Exhibit D prior to such gift being promised or made, if practicable, or as soon thereafter as practicable, and in no case more than 48 hours thereafter; and

**§5(B)(5)(b)(iv)** – the MLBPA does not determine and notify the Player Agent or Applicant that the gift is prohibited by these Regulations.

**§5(B)(5)(c) – Gifts or Loans to Non-Client Players; Exceptions** –Any gift or loan, or promise of a gift or loan, of money or any other thing of **any value** by a Player Agent or Applicant to any player who is not represented or assisted by the Player Agent or Applicant at the time of either the promise or the making of the gift or loan, or to persons related to or associated with such player, is prohibited; **except that**:

**§5(B)(5)(c)(i)** – a Player Agent or Applicant may, on two occasions only, pay the actual and reasonable cost of a meal for a player who is not represented by the Player Agent or Applicant at the time of the meal, and for the immediate family of that player; and

**§5(B)(5)(c)(ii)** – a Player Agent or Applicant may, on one occasion only, pay the actual and reasonable transportation and lodging expenses of a player who is not represented by the Player Agent or Applicant at the time, and one guest of that player, in connection with such player's overnight visit to the Agent or Applicant's offices.

**§5(B)(5)(c)(iii)** – a Player Agent or Applicant must disclose to the MLBPA the names of the persons for whom the meal, transportation and/or lodging was purchased and the purpose and cost of the meal, transportation and/or lodging at the same time as and in addition to any other information required by Section 5(B)(8).  Certified Player Agents shall submit these disclosures using the appropriate forms on the Agent website (https://www.mlbpaagent.org) and Applicants for Certification shall make these disclosures by electronic mail to agent.reg@mlbpa.org.

**§5(B)(5)(d) – Gifts or Loans Conditioned on Becoming or Remaining a Client** – Any gift or loan, or promise of a gift or loan, of money or any other thing of **any value** by a Player Agent or Applicant to any player, or any person related to or associated with such player, is prohibited if the gift or loan, or any terms of the gift or loan (*e.g.,* the interest rate or repayment schedule of a loan, or whether a gift is to be returned or a loan repaid), is subject to any condition or requirement that the player use or continue to use the services of any person or firm as Player Agent, Representative or Draft Advisor.  Any provisions of an agreement or promissory note calling for the return of a gift or its value, or the repayment or restructuring of the terms of a loan, based on such a condition or requirement shall be unenforceable against the recipient of the gift or loan.

29

The types of transactions prohibited by this Section 5(B)(5)(d) include, without limitation, the following, solely by way of example:

§5(B)(5)(d)(i) – a Recruiter promises to give a player an iPad, if the player becomes a client of the Player Agent employing the Recruiter;

§5(B)(5)(d)(ii) – a Player Agent loans a sum of money to one of his player clients to make a down payment on a house and has the player sign a promissory note providing for repayment of the loan over a specified term of months and at a specified low interest rate, but the promissory note contains an acceleration clause requiring that, if the player terminates the Player Agent, the loan must be repaid in full immediately and at a higher retroactive rate of interest; or

§5(B)(5)(d)(iii) – a Player Agent Representation Agreement provides that the Player Agent will provide Baseball Equipment to the player so long as the player remains a client of the Player Agent, but the Agreement requires the player to reimburse the Player Agent for the value of all Baseball Equipment provided to him if the player terminates the Player Agent before the player retires from professional baseball.

§5(B)(5)(e) – Providing Baseball Equipment – No Player Agent or Applicant shall provide, or promise to provide, free or discounted Baseball Equipment to any player, or any person related to or associated with such player, unless:

§5(B)(5)(e)(i) – any promise to provide Baseball Equipment is included in all of the Player Agent's or Applicant's written representation agreements with professional players as a service offered on the same terms to all professional player clients;

§5(B)(5)(e)(ii) – the Baseball Equipment is provided to a professional player who is represented by the Player Agent or Applicant at the time it is provided and is not subject to any condition or requirement that the player use or continue to use the services of any person or firm as Player Agent or Representative;

§5(B)(5)(e)(iii) – the total aggregate value of Baseball Equipment provided by all Player Agents or Applicants to the player does not exceed $2,000 U.S. in that calendar year.  For purposes of compliance with this item (iii), within 48 hours after a professional player ceases to be a client of a Player Agent or Applicant, that Player Agent or Applicant is required to immediately provide the MLBPA with an accounting of the aggregate value of Baseball Equipment he or she purchased for that player during the current calendar year.  A successor Player Agent or Applicant is prohibited from providing a new client with any Baseball Equipment until the MLBPA informs the successor of the value of all Baseball Equipment provided by the former Player Agent to that player during that calendar year; and

30

**§5(B)(5)(e)(iv)** – the Player Agent or Applicant completes and files with the MLBPA on or before March 1 of the next year an annual *Equipment Disclosure Report*, in the form attached to these Regulations as Exhibit E, disclosing the information called for in the form about Baseball Equipment provided during the immediately preceding calendar year to all professional players.  The Player Agent or Applicant further must maintain copies of Baseball Equipment orders, sales receipts and other records and agreements sufficient to demonstrate compliance with items (i), (ii) and (iii) of this Section 5(B)(5)(e) for at least the last two complete calendar years, and make those records and agreements available to the MLBPA upon request.

**§5(B)(5)(f) – Guaranteeing Minimum Off-Field Compensation** – No Player Agent, Expert Agent Advisor or Applicant shall guarantee or promise any player that the Player Agent, Expert Agent Advisor or Applicant will secure payment to the player of any minimum amount of compensation from future marketing, endorsement, personal appearance or similar off-field transactions.

**§5(B)(5)(g) – Waivers or Reduction of Fees or Expenses** – For purposes of this Section 5(B)(5)(g), the term "Fees or Expenses Customarily Charged" means the fees and reimbursable expenses that a Player Agent or Applicant ordinarily, or most frequently, contracts to be paid by a category of players similarly situated, including the player in question.  A category of players similarly situated refers to any reasonably defined category of players who, for purposes of determining the Player Agent's or Applicant's fees and reimbursable expenses, have similar characteristics (*e.g.,* all Major League Players, all players eligible for the first year Major League player draft, all Players who have Major League service sufficient for salary arbitration eligibility, all Players who earn at least a stipulated salary, etc.)

**§5(B)(5)(g)(i) – Waivers or Reduction of Fees or Expenses for Amateur Players** – A Player Agent's or Applicant's waiver or reduction of Fees or Expenses Customarily Charged in return for an amateur player's agreement, or, in the case of an amateur player who has not attained the age of majority, his parent's or guardian's agreement, to have the Player Agent or Applicant act as his Player Agent, Representative or Draft Advisor, is prohibited.

**§5(B)(5)(g)(ii) – Waivers of Fees or Expenses for Professional Players** – Notwithstanding any other provision of these Regulations, a Player Agent's or Applicant's waiver or reduction of Fees or Expenses Customarily Charged to professional players in return for a professional player's agreement, or, in the case of a professional player who has not attained the age of majority, his parent's or guardian's agreement, to have the Player Agent or Applicant act or continue to act as the player's Player Agent or Representative is **not** prohibited, **provided** that such waiver or reduction first is disclosed in writing to the MLBPA and is disclosed upon request to any other professional player represented by or being Recruited by or on behalf of the Player Agent or Applicant.  The MLBPA, in its sole,

unreviewable discretion, may require the Player Agent or Applicant to disclose such waiver or reduction to all professional players represented by or being Recruited by or on behalf of the Player Agent or Applicant.

**§5(B)(5)(h) – Ownership or Financial Interest in an Agency** – A Player Agent may not enter into any agreement with a player that allows the player to hold an ownership or financial interest in an agency, that promises the player an ownership or financial interest in an agency, or that provides the player with referral fees or a reduction in his own fees for referring other players to a Player Agent or Applicant while such player is under contract to play professional baseball.

**§5(B)(6) – Violating Duty of Loyalty** – No Player Agent, Expert Agent Advisor or Applicant shall violate the duty of loyalty described in Section 4(L)(1).

**§5(B)(7) – Violating a Temporary Determination by the MLBPA** – No Player Agent, Expert Agent Advisor or Applicant shall violate or fail to comply with a temporary determination by the MLBPA, under Section 4(L)(3), concerning the rights of the parties and affected players in a dispute between Player Agents or Applicants involving interpretation, application, enforcement or alleged breach of the duty of loyalty or a Restrictive Covenant.

**§5(B)(8) – Failing to Disclose Communication with Non-Client Player(s)** – No Player Agent or Applicant shall fail to provide written disclosure to the MLBPA of any communication, direct or indirect, written, oral or electronic, with any Player whom the Player Agent or Applicant is not designated to represent at the time of such communication. Such disclosures shall be made using the appropriate form on the Agent website (https://www.mlbpaagent.org) in accordance with Sections 5(B)(8)(a) through 5(B)(8)(c). The **only** such communications that are not subject to this disclosure requirement are communications, lasting no more than a few seconds, which involve no substance (*e.g.,* "Hello, how are you?").

**§5(B)(8)(a) – Advance Notice of Communications if Possible** – Whenever a communication is required to be disclosed by this Section 5(B)(8), and it is possible to provide advance written notice to the MLBPA no more than 72 hours and no less than 24 hours before the communication is initiated, the Player Agent or Applicant shall provide such advance written notice.

**§5(B)(8)(b) – All Other Communications to be Disclosed as Soon as Possible** – Whenever a communication is required to be disclosed by this Section 5(B)(8), and it is not possible for the Player Agent or Applicant to provide advance written notice of the communication to the MLBPA no more than 72 hours and no less than 24 hours before the communication is initiated (*e.g.,* unanticipated communications), the Player Agent or Applicant shall provide written notice of the communication to the MLBPA as soon as possible, and in no case more than 24 hours after such communication is initiated.

**§5(B)(8)(c) Information to be Disclosed** – Every disclosure to the MLBPA required by this Section 5(B)(8) shall be made using the appropriate form on the

32

Agent website (https://www.mlbpaagent.org) and include the following information:

> **§5(B)(8)(c)(i)** – the name(s) of the Player Agent(s) or Applicant(s) participating in or expected to participate in the communication;

> **§5(B)(8)(c)(ii)** – the name(s) of the Player(s) participating in or expected to participate in any such communication, or in the case of communications with a group of Players where identification of each Player is not practicable, a reasonable description of the group (*e.g.,* all Players at a particular event, etc.);

> **§5(B)(8)(c)(iii)** – the date, time and specific location where the communication occurred or is expected to occur (location is not required if the communication was by telephone, mail, e-mail, text message etc.); and

> **§5(B)(8)(c)(iv)** – whether the communication, in whole or in part, included or involved, or is expected to include or involve, any Recruiting (as defined in Section 2(D)).

**§5(B)(9) Persisting in Unwelcome Communication with a Player** – No Player Agent, Expert Agent Advisor or Applicant shall continue to communicate with a player, or knowingly cause or permit any other person to continue to communicate with a player on behalf of the Player Agent, Expert Agent Advisor or Applicant, after receiving a written request by any means, from that player, or from the MLBPA on behalf of that player, that such communications should cease.  In addition, no Player Agent, Expert Agent Advisor, or Applicant shall attempt to circumvent this requirement by contacting a third party with whom a player has a familial relationship if that player has requested not to be contacted. A player's "do not contact" request shall remain in effect for the duration of one of two 6-month periods: (a) November 1st through March 31st or (b) April 1st through October 31st. At the conclusion of the 6-month period, the Player's "do not contact request" shall automatically expire unless renewed by the Player for the subsequent set period.

**§5(B)(10) – Providing False or Misleading Information** – No Player Agent, Expert Agent Advisor or Applicant shall provide or cause to be provided any materially false or misleading information, or conceal or fail to disclose in circumstances when disclosure is required, any material fact relating to conduct described in Section 3(A) or 3(B), to any player or to anyone related to or associated with such player, or to the MLBPA.

**§5(B)(11) – Cooperating or Communicating with Club to Undermine a Player or Fellow Player Agent** – No Player Agent, Expert Agent Advisor or Applicant shall cooperate with any professional baseball club or club official in any effort to denigrate or undermine a player, a Player Agent or Expert Agent Advisor or communicate any information to any club official the purpose of which is to denigrate or undermine a player, Player Agent's or Expert Agent Advisor's business dealings with such club.  Nothing in this Section 5(B)(11) shall be interpreted to prohibit a Player Agent or Expert Agent Advisor from discussing the comparability of players with any club official in the context of negotiating a Player's Uniform Player's Contract.

**§5(B)(12) – Actual or Potential Conflicts of Interest** – No Player Agent, Expert Agent Advisor or Applicant shall engage in any conduct which, in the MLBPA's reasonable judgment, may create an actual or potential conflict of interest with the effective representation of players, or the appearance of such a conflict, provided that the simultaneous representation of two or more players on any one Club shall not, standing alone, constitute a *per se* violation of this provision. The MLBPA reserves the right under appropriate circumstances to require a Player Agent or Expert Agent Advisor to cease representing or assisting in the representation of a particular player or players on account of a conflict of interest perceived by the MLBPA in the simultaneous representation of another similarly situated player. The following is a non-exhaustive list of examples of conduct by a Player Agent, Expert Agent Advisor or Applicant that shall be deemed a conflict of interest, or the appearance of a conflict of interest, in violation of this Section 5(B)(12):

> **§5(B)(12)(a)** – Acquiring, holding or seeking to acquire or hold, either directly or indirectly, any ownership or financial interest in any Major League, Minor League or other professional baseball club or in any related business, firm or venture, and seeking employment with any Major League, Minor League or other professional baseball club or in any related business, firm or venture, unless previously authorized in writing by the MLBPA to do so in accordance with any specified conditions (*e.g.,* notice to clients, client waivers, etc.). Any Player Agent, Expert Agent Advisor or Applicant who is considering engaging in any of the above conduct must notify the MLBPA at the outset of any discussions with a Major League, Minor League or other professional baseball club or any related business, firm or venture; or

> **§5(B)(12)(b)** – Being employed by, or in any capacity representing, or soliciting or accepting money or any thing of value from, or providing or causing money or any thing of value to be provided to Major League Baseball or any of its affiliated entities, any Major or Minor League Club, any other employer of professional baseball players, or any employee or official of them, including scouts or individuals acting in the capacity of a scout, unless previously authorized in writing by the MLBPA to do so in accordance with any specified conditions (*e.g.,* notice to clients, client waivers, etc.); or

> **§5(B)(12)(c)** – Employing or retaining a person to provide professional services related to the representation of players where that person is also employed or retained to provide services to Major League Baseball or any of its affiliated entities, any Major or Minor League Club, any other employer of professional baseball players, or any employee or official of them, including scouts or individuals acting in the capacity of a scout, unless previously authorized in writing by the MLBPA to do so in accordance with any specified conditions (*e.g.,* notice to clients, client waivers, etc.). A certified Player Agent or Expert Agent Advisor who has accepted a position in senior management of a Club or the Office of the Commissioner shall be prohibited from maintaining a direct or indirect financial interest in an agency that represents any player, as defined by Section 2(A), while he or she is employed by a Club or by the Commissioner's Office; or

> **§5(B)(12)(d)** – Employing or retaining a person to provide professional services related to the representation of a Player Agent or Expert Agent Advisor in

34

conjunction with an MLBPA grievance where that person is also employed or retained to provide services to Major League Baseball or any of its affiliated entities, any Major or Minor League Club, any other employer of professional baseball players, or any employee or official of them, including scouts or individuals acting in the capacity of a scout, unless previously authorized in writing by the MLBPA to do so in accordance with any specified conditions (*e.g.,* notice to clients, client waivers, etc.).

### §5(B)(13) – Undermining Collectively Bargained Rights and Benefits – No

Player Agent, Expert Agent Advisor or Applicant shall negotiate or agree to, or attempt to negotiate or agree to, any provision that purports to have the effect of eliminating or reducing any Player right or benefit contained either in any collectively bargained agreement between the Major League Baseball Clubs and the MLBPA, or in the Uniform Player's Contract of a Player.

### §5(B)(14) – Unauthorized Disclosure of Confidential Information – No Player

Agent, Expert Agent Advisor or Applicant shall engage in any unauthorized disclosure of confidential information obtained from or about a player, a fellow Player Agent, Expert Agent Advisor or Applicant, or the MLBPA, or during meetings or conference calls in which the MLBPA participates, except as required by law.  The duty to maintain the confidentiality of this information shall continue even after the Player Agent, Expert Agent Advisor or Applicant ceases to be certified by the MLBPA.  Confidential information includes, but is not limited to, any information expressly designated as confidential by the MLBPA or a player, either orally or in writing, all information that would fall within the definitions of confidential information set out in the Joint Drug Agreement, all information that the MLBPA makes available to Certified Agents in password or credential-protected databases or websites, and any password, credential or other device the MLBPA provides to Certified Agents in order to access MLBPA databases and information.

### §5(B)(15) – Unlawful or Dishonest Conduct – No Player Agent, Expert Agent

Advisor or Applicant shall engage in unlawful conduct or conduct involving dishonesty, fraud, deceit, misrepresentation, or other conduct which reflects adversely on his or her fitness to serve as a Player Agent or Expert Agent Advisor.

### §5(B)(16) – Representing Replacement Player(s) During a Strike or Lockout –

Absent the advance written consent of the MLBPA, no Player Agent, Expert Agent Advisor or Applicant shall represent or assist in representing, when an MLBPA-sanctioned strike by Players or a lockout of Players is in effect, any replacement player with respect to the negotiation or execution of a Uniform Player's Contract or any other contract whereby the replacement player agrees to play baseball for a Major League Club.  For purposes of this Section 5(B)(16), the representation of a replacement player shall include, without limitation, advising or assisting in his representation or engaging any third party to represent, advise or assist in his representation; and a strike or lockout shall be deemed to be in effect during an off-season if the championship season ended with such strike or lockout in effect and such strike or lockout has not officially been terminated by the MLBPA or Clubs.  In addition, for purposes of this Section 5(B)(16), the term "replacement player" shall mean (a) any individual who has played in or disclosed his intention to play in replacement games, including Spring Training games, or (b) any individual whom the Player Agent or Applicant or Expert Agent Advisor has reason to believe intends to play in replacement games, including Spring Training games.

**§5(B)(17) – Evading Mandatory Arbitration Procedures or Failing to Comply with Arbitration Award** – No Player Agent, Expert Agent Advisor or Applicant shall evade, or attempt to evade, the arbitration procedures mandated as the exclusive method for resolving disputes within the scope of Section 7, or fail to comply with any final and binding arbitration award issued pursuant to Section 7.

**§5(B)(18) – Failing to Comply with the MLBPA Salary Arbitration Support Program** – No Player Agent, Expert Agent Advisor or Applicant shall fail to comply with any requirement of the MLBPA's Salary Arbitration Support Program, which is incorporated by reference in these Regulations.  This program applies to negotiations for (i) any contract that will cover any season in which a player would otherwise be eligible for salary arbitration or (ii) any contract for a more junior player under reserve that extends into one or more years of potential salary arbitration eligibility (collectively referred herein as a "salary arbitration contract").

    **§5(B)(18)(a)** – Certified Agents are subject to an "initial" consultation requirement and an "ongoing" consultation requirement with respect to salary arbitration contracts.  Initially, an Agent (not an attorney hired by the Agent) must consult with an MLBPA attorney before making a first offer (or before first discussing numbers or comparable players with a Club) or promptly after receipt of the Club's first offer.  In essence, consultation must take place at the outset of the negotiation.  The MLBPA will then advise Certified Agents of specific additional and ongoing consultation requirements for the remainder of the representation up to and including the salary arbitration hearing.

    **§5(B)(18)(b)** – No later than October 15, in any year, each agent group that anticipates negotiating a salary arbitration contract must provide the MLBPA with a list of all individuals who will be involved in the preparation and presentation of salary arbitration cases and the negotiation of salary arbitration contracts.  Each agency team must include an individual whom the MLBPA determines, in its discretion, is qualified to present a baseball salary arbitration case.  As a part of its Salary Arbitration Support Program, the MLBPA may require any Player Agent or Expert Agent Advisor to permit disclosure of any previous salary arbitration presentations to any other Player Agent, Expert Agent Advisor or Applicant designated by the MLBPA or to permit any other Player Agent, Expert Agent Advisor or Applicant designated by the MLBPA to observe any salary arbitration hearing.

    **§5(B)(18)(c)** – In some cases an Agent may also be required to hire an Expert Agent Advisor or outside counsel with experience in salary arbitration to further assist in the creation of the salary arbitration exhibits and presentation as well as with the consultation with the Player, as described below in Section §5(B)(18)(d)**.**

    **§5(B)(18)(d)** – Throughout the calendar year, the MLBPA will identify Players whom they deem to be targets for potential pre-salary arbitration and/or first-year salary arbitration multi-year contract offers and notify the designated Agent for those Players that the Player has been identified as such a target.  Within no more than three (3) weeks following receipt of written notice from the MLBPA that an Agent's client has been identified as a target, the Agent must draft and submit to both the Player and the MLBPA a set of exhibits that contains at least the following information:

- A review of the Player's statistical performance through that point in the Player's career and a projection of his future performance

- The Player's salary arbitration projections through his final year of salary arbitration, citing potential comparable Players

- The Player's Free Agency salary projections, citing potential comparable Players

- The costs and benefits of signing a multi-year contract at this point in the Player's career

- A review of relevant prior pre-arbitration and first-time eligible multi-year contracts and structures, including the effect of and number of Club Options in those contracts

The Agent must also speak with and/or meet with the Player, at a mutually convenient time, to review the presentation and discuss the costs and benefits of signing a multi-year contract at that point in the Player's career. An MLBPA representative may join the Agent to assist him or her with the meeting depending on the circumstances. Prior to that meeting, the Agent must consult with the MLBPA on the drafting of these exhibits and the talking points for the consultation with the Player. In order to comply with the submission requirement, the MLBPA must be copied on an email and/or text communication whereby the presentation is sent to the Player.

**§5(B)(19) – Failing to Comply with Major League Tampering Rules** – No Player Agent, Expert Agent Advisor or Applicant shall engage in any conduct which is in violation of or inconsistent with any provision of the Major League Rules prohibiting tampering (including any then-effective Commissioner's Tampering Bulletin).

**§5(B)(20) – Providing Banned Substances** – No Player Agent, Expert Agent Advisor or Applicant shall provide or assist any player in obtaining any substance prohibited under Major League Baseball's Joint Drug Prevention and Treatment Program or any other rules applicable to that player. No Player Agent, Expert Agent Advisor or Applicant shall engage in any other conduct that could subject a player to discipline under Major League Baseball's Joint Drug Prevention and Treatment Program.

**§5(B)(21) – Participation in Gambling on Baseball or Fantasy Baseball Games** – No Player Agent, Expert Agent Advisor or Applicant may (i) gamble on baseball or participate in Fantasy Baseball Games in which prize money or other things of value are available to participants; (ii) assist other individuals who are gambling on baseball or participating in such Fantasy Baseball Games; or (iii) arrange for others to gamble on baseball or participate in such Fantasy Baseball Games on their behalf. "Fantasy Baseball Games" include, but are not limited to, online daily fantasy baseball games from providers such as FanDuel, DraftKings and similar entities. This prohibition does not apply to participation in similar lawful gambling or fantasy games involving other professional sports.

**§5(B)(22) – Other Violations of Agent Regulations** – No Player Agent, Expert Agent Advisor or Applicant shall, in any way not specifically listed above, violate or fail to comply with any applicable provision or requirement of these Regulations.

### §5(C) – Vicarious Liability of Player Agents, Expert Agent Advisors and Applicants

A Player Agent, Expert Agent Advisor or Applicant who fails through inadequate supervision to ensure compliance with these Regulations and observance of reasonable standards of care by all employees and other persons acting on his or her behalf or on behalf of his or her firm, or who employs, authorizes, directs, requests, or causes any other person to violate any provision of these Regulations, is vicariously responsible and subject to discipline and liable for any damage caused to others as if he or she had engaged in such conduct himself or herself.

### §5(D) – Quality of Player Agent and Expert Agent Advisor Representation

The MLBPA expects each Player Agent and Expert Agent Advisor who has been granted certification to represent or assist in representing Players and each Applicant seeking certification, to carry out Player representation services with the highest degree of professional competence and integrity.  Toward that end, Player Agents, Expert Agent Advisors, and Applicants seeking Certification must take the necessary steps to become knowledgeable about the history and business of Major League Baseball and the MLBPA, including their collective bargaining agreements, the Major League Rules affecting Players, these Regulations, data relating to Player salaries and benefits, negotiating techniques, and all relevant legal requirements.

## Section 6:  Player Agent Designation Forms and Representation Agreements

A Player exercises his right under Article IV of the Basic Agreement to designate an agent to conduct on his behalf, or to assist him in, the negotiation of terms to be included in his Major League Uniform Player's Contract by signing, dating and filing with the MLBPA, a *Player Agent Designation* form designating one or more Player Agents or Applicants.  For the Player's designation to be effective, the person(s) so designated must already have or must apply for and obtain General Certification from the MLBPA, as described in Section 2(C)(1), and be certified to the Major League Clubs by the MLBPA as authorized to act as a Player Agent for that Player.  The relationship between each Player and the Player Agent(s) who represent, assist or advise him, as described in Section 3(A), must be memorialized in a written Player Agent Representation Agreement that complies with these Regulations.

### §6(A) – Player Agent Designation Form Required Each Year

In order to be authorized to represent a Player as described in Section 3(A), a person must first be designated by that Player on the prescribed *Player Agent Designation* form, signed by that Player and filed with the MLBPA (see Exhibit B, "*Player Agent Designation*" attached to these Regulations).  A *Player Agent Designation* form is valid for no more than one year or until revoked by the Player who signed it.  If the MLBPA, upon receipt of a valid, current *Player Agent Designation* form signed by that Player, has already granted General Certification to the person so designated, or approves such person's Application and grants General Certification to him or her,

the MLBPA may authorize such person to represent that Player by certifying to the Major League Clubs that he or she is authorized to act as a Player Agent for that Player.

## §6(B) – Validity of Player Agent Designation Form

A *Player Agent Designation* form is not valid unless:

>   **§6(B)(1)** – it is signed and dated by the Player on the date it was actually signed, a signed and dated copy is provided to the Player at the time of signing, and it has not expired or been revoked;

>   **§6(B)(2)** – it is fully and legibly completed on the form attached as Exhibit B to these Regulations;

>   **§6(B)(3)** – it is filed with the MLBPA within ten days of its execution, provided that a General Certified Agent who is re-designated by an existing client between February 1 and April 5 may submit that player's executed *Player Agent Designation* form to the MLBPA by no later than April 15 of that year; and

>   **§6(B)(4)** – if English is not the Player's principal language, the Player is provided with an accurate translation of the *Player Agent Designation* form into the Player's principal language, which translation must also be signed and dated by the Player on the same date the English version is signed and must also be timely filed with the MLBPA with a copy provided to the Player.  In the event of any inconsistency between the terms of the English version and the translation, the English version shall govern.

## §6(C) – Player Agent Representation Agreement

A Player Agent or Applicant who is granted a General Certification to represent a Player as described in Section 3(A) must, in addition to being certified by the MLBPA to the Major League Clubs as a Player Agent for that Player, enter into a written Player Agent Representation Agreement with that Player in plain language that specifies:

>   **§6(C)(1)** – the services to be provided to the Player;
>   **§6(C)(2)** – the fees to be charged for those services; and
>   **§6(C)(3)** – the expenses, if any, to be reimbursed.

## §6(D) – Copies of Player Agent Representation Agreement to Player and the MLBPA

No Player Agent Representation Agreement shall be enforceable against the Player unless the Player, at the time of signing the Agreement, is provided with an executed copy of the Agreement, and any translation of the Agreement required by Section 6(E).  Within ten (10) days after its execution, a copy of the executed Player Agent Representation Agreement and any required translation shall be provided to the MLBPA by the Player Agent or Applicant, provided that a General Certified Agent who re-signs an existing client between February 1 and April 5 may submit

that player's executed Player Agent Representation Agreement and any required translation to the MLBPA by no later than April 15 of that year.

## §6(E) – Translation of Player Agent Representation Agreement

If English is not the Player's principal language, the Player, at the time of execution, must be provided with an accurate translation of the Player Agent Representation Agreement into the Player's principal language, which translation must also be executed by the Player and Player Agent or Applicant, with a copy provided to the Player.  Within ten (10) days of its execution, a copy of the executed translation shall also be provided to the MLBPA, provided that a General Certified Agent who re-signs an accurate translation of an existing client between February 1 and April 5 may submit that player's executed, translated Player Agent Representation Agreement to the MLBPA by no later than April 15.  Failure to provide the Player at the time of signing, with an executed, translated Player Agent Representation Agreement shall render it and any corresponding English-language agreement unenforceable against the Player.  In the event of any inconsistency between the terms of the English-language agreement and the translation, the English-language version shall govern.

## §6(F) – Representation Agreement in Name of Player Agent's Company

Each Player Agent Representation Agreement executed in the name of, or with a signatory that is, a company, partnership, corporation, or other business entity shall contain a separate paragraph which provides as follows:

> *[Insert name of the business entity]* agrees that it will comply with all provisions of the MLBPA's Regulations Governing Player Agents and any subsequent amendments to those Regulations adopted by the MLBPA's Executive Board.

If the individual designated by the Player as his Player Agent is not authorized by the business entity to so agree, the contract shall include a rider executed by an authorized agent of the business entity so binding the business entity.  No Player Agent Representation Agreement in the name of or on behalf of a business entity shall be enforceable against the Player in the absence of compliance with this Section 6(F).

## §6(G) – One Year Maximum Duration of Representation Agreement

Each Player Agent Representation Agreement shall have a clearly specified duration, not to exceed one year from the date of its execution by the Player, and shall not contain an automatic renewal provision or any other provision which purports to extend any term of the Agreement beyond one year.  No Player Agent Representation Agreement shall be enforceable beyond one year from the date the Player executed the Agreement and any required translation; **provided however**, that nothing in this Section 6(G) shall prohibit a Player and Player Agent or Applicant from agreeing to or enforcing a provision in the Agreement requiring the Player to pay fees that are earned, or reimbursable expenses that are incurred, during the one-year maximum term of the Representation Agreement, but are not payable until after the Representation Agreement expires or is terminated (*e.g.,* fees for future seasons covered by a multi-year Uniform Player's Contract, or fees on Player compensation deferred until a later year).

## §6(H) – Prior Representation Agreements

No representation agreement (including a Player Agent Representation Agreement) entered into before a player is added to a 40-man roster of a Major League Club shall be recognized or enforceable once the Player is on a 40-man roster. For a Player Agent Representation Agreement to be enforceable against the Player after he is added to such 40-man roster, the Player must execute (or re-execute) a Player Agent Representation Agreement in compliance with these Regulations.

## §6(I) – Limitations on Player Agent Fees

No Player Agent or Applicant shall contract for or charge a Player any fee based upon a Player's compensation from the post-season Playoff and World Series pool, collectively bargained Player allowances, collectively bargained compensation from international play under the Basic Agreement, the MLBPA group licensing program or any other payment bargained for collectively or resulting from the Player's membership in the MLBPA.

No Player Agent or Applicant shall, either directly or indirectly, contract for, charge, or collect from a player any fee based upon a player's agreement to receive, or receipt of, any payment or compensation in any form in consideration for his assignment to another of future earnings related to Major League or Minor League Baseball, including but not limited to future compensation for employment as a Major League or Minor League player and for future endorsements or future assignment of publicity rights while employed as a Major League or Minor League player, *provided that* a Player Agent or Applicant may charge a player an hourly rate, reasonable in light of the rates charged for similar services in the geographic area, for time spent negotiating such an agreement if the Player Agent or Applicant enters into a written agreement for this purpose in English and in the player's principal language if it is not English.

No Player Agent or Applicant shall, either directly or indirectly, contract for, charge, or collect from a player any fee based upon a player's agreement to receive, or receipt of, a loan in any form that is secured in any way by his future earnings related to Major League Baseball, including but not limited to future compensation for employment as a Major League or Minor League player and for future endorsements or future assignment of publicity rights while employed as a Major League or Minor League player, *provided that* a Player Agent or Applicant may charge a player an hourly rate, reasonable in light of the rates charged for similar services in the relevant geographic area, for time spent negotiating such an agreement if the Player Agent or Applicant enters into a written agreement for this purpose in English and in the player's principal language if it is not English.

No Player Agent or Applicant shall contract for or charge a Player any fee for the services described in Section 3(A), unless the Player's negotiated salary exceeds the applicable minimum salary for that year established by the Basic Agreement. Where the salary negotiated exceeds the applicable minimum salary, any fee charged may not, when subtracted from the salary negotiated, produce a net salary to the Player below or equal to the minimum salary. For purposes of this Section 6(I), bonuses included in a Player's Uniform Player's Contract shall constitute salary only if earned by the Player. The fee limitation shall be prorated based on the applicable Major League or Minor League minimum salary rate for a Player who is paid at a Major League salary rate for part of the season and at a Minor League salary rate for part of the season. This paragraph of Section 6(I) shall not apply if the Player involved was a professional free agent at the time the Player Agent negotiated the Player's Uniform Player's Contract.

## §6(J) – Mandatory Arbitration of All Player-Player Agent Disputes

All disputes between a Player and a Player Agent or Applicant (or the business entity that is signatory to a Player Agent Representation Agreement), except for any dispute that arose at a time when the relation between the parties was not that of agent and player, shall be resolved exclusively through final and binding arbitration pursuant to Section 7 of these Regulations.  Every Player Agent Representation Agreement shall contain a separate paragraph which provides as follows:

> All disputes between *[insert Player's name]* and *[insert name of Player Agent or Applicant or the business entity if it is the party signatory to the Agreement]*, except for any dispute that arose at a time when the relation between the parties was not that of agent and player, shall be resolved exclusively in accordance with the final and binding arbitration procedures set forth in Section 7(A) of the MLBPA's Regulations Governing Player Agents.  This paragraph supersedes any provision in this or any other agreement between these parties that is or may appear to be in conflict with this paragraph.

Any provision in any agreement which purports to conflict with the provision quoted above is not permissible or enforceable, and may subject a Player Agent or Applicant who proposes or agrees to such provision to discipline by the MLBPA.

## §6(K) – Revocation of Player Agent Designation

Except as provided in Section 6(L), a Player may revoke a *Player Agent Designation* at any time by providing the MLBPA, or the Player Agent(s) or Applicant(s) designated therein, a written notice revoking the Player's current Designation, or terminating the Player's agency relationship with the Player Agent(s) or Applicant(s) designated therein.  The signing and filing of a new *Player Agent Designation* form which does not designate a Player Agent who was designated on the immediately prior Designation form filed with the MLBPA by that same Player also shall effectively revoke that Agent's Designation.   An effective revocation of a *Player Agent Designation* terminates a Player Agent's authority thereafter to represent that Player notwithstanding any provision of a Player Agent Representation Agreement that is or may appear to be in conflict with this Section 6(K).  The MLBPA shall notify a Player Agent or Applicant whenever it learns that a *Player Agent Designation* designating that Player Agent or Applicant is revoked.

## §6(L) – When Player Must Consult with the MLBPA to Terminate Agent

A Player with Major League service in the immediately preceding season who is unsigned for the following Major League Baseball season may not revoke a *Player Agent Designation* or terminate a Player Agent Representation Agreement after October 15th of any year or the fifth day after the last day of the Player's season, whichever is later, and before February 22nd of the next year, unless the Player first consults with the MLBPA.  Any revocation of a *Player Agent Designation* or termination of a Player Agent Representation Agreement during the applicable period will not be accepted by the MLBPA until this consultation requirement is fulfilled.

### §6(M) – Liquidated  Damages, Specific Contractual Remedies Prohibited

No Player Agent Representation Agreement shall provide for liquidated damages or shall specify a remedy for a Player's termination or breach of the Agreement.

### §6(N) – Approved Standard Form of Player Representation Agreement

The MLBPA may adopt and promulgate a standard form of Player Agent Representation Agreement.

## Section 7 – Exclusive Arbitration Procedures for Resolving Disputes

The impartial, final and binding arbitration process provided in this Section shall be the exclusive method for resolving the following categories of disputes:

- all disputes between Players and Player Agents, Applicants, Agencies, affiliated persons, or entities except for any dispute that arose at a time when the relation between the parties was not that of agent and player;

- all disputes between or among Player Agents, Applicants, Agencies, affiliated persons, or entities, and other Player Agents,  Applicants, Agencies, affiliated persons, or entities that relate to the representation or Recruitment of Players or the validity, application, interpretation, breach or enforcement of the duty of loyalty described in Section 4(L)(1) or any Restrictive Covenant;

- all disputes between or among Player Agents, Applicants, Agencies, affiliated persons or entities and Expert Agent Advisors that relate to representing, assisting or advising a Player Agent on behalf of a Player in the functions described in Sections 3(A) and Section 2(C)(3)(a); and

- All disputes between a Player Agent, Applicant or Expert Agent Advisor or his or her employer or entity through which he or she conducts business or Agency or affiliated persons or entities, and the MLBPA, its officers, employees, and representatives, including but not limited to any appeal by a party aggrieved by an appealable decision of the MLBPA with respect to his or her certification or discipline.

This provision is intended and designed to ensure that all disputes -- which involve essentially internal matters concerning the relationships and dealings among individual Players, Player Agents, Expert Agent Advisors, Applicants, Agencies and affiliated persons or entities, and the MLBPA in its capacity as the exclusive bargaining representative for the Players -- are handled expeditiously and privately by the impartial tribunals established in these Regulations, instead of through more costly, time-consuming and public formal court proceedings.

### §7(A) – Procedure for Resolving Disputes among Players, Player Agents, Expert Agent Advisors and Applicants

The following procedures shall be the exclusive method of resolving all disputes between Players and Player Agents, Applicants or their employers or entities through which they conduct business, or Agencies or affiliated persons or entities, except for any dispute that arises at a time when the relation between the parties is not that of agent and player; or between Player Agents, Applicants,

Agencies, affiliated persons, or entities and other Player Agents, Applicants, Agencies, or affiliated persons or entities, including employers or entities through which they conduct business, that relate to the representation or Recruitment of Players or the validity, application, interpretation, breach or enforcement of the duty of loyalty described in Section 4(L)(1) or any Restrictive Covenant; or between Player Agents and Expert Agent Advisors and other Player Agents and Expert Agent Advisors, including their employers or entities through which they conduct business or Agencies or affiliated persons or entities, that relate to representing, assisting or advising a Player Agent on behalf of a Player in the functions described in Sections 3(A) and Section 2(C)(3)(a).

> **§7(A)(1) – Procedure Invoked by Filing and Serving a Grievance** – A Player, Player Agent, Expert Agent Advisor, Applicant, Agency, or affiliated entities or persons, or any of their employers or any entity through which they conduct business shall invoke the arbitration procedure by filing a written grievance with the MLBPA and serving a copy on the opposing party.  The grievance shall allege in plain terms:

>> **§7(A)(1)(a)** – the facts and circumstances giving rise to the dispute,
>> **§7(A)(1)(b)** – the claim(s) he or she asserts against the other party(ies),
>> **§7(A)(1)(c)** – the provision(s) of any agreement(s) or Regulations alleged to have been violated, and
>> **§7(A)(1)(d)** – the specific relief sought.

> A single grievance may combine multiple claims against more than one party if the claims arose out of the same transaction, agreement or occurrence, or are sufficiently related that processing the claims as a single case would promote efficiency and cost-effectiveness.

> **§7(A)(2) – Method of Filing and Serving Grievance and other Arbitration Papers** – A  grievance, or any subsequent arbitration filing shall be filed with the MLBPA by delivering or mailing it in an envelope marked "Attention: Agent Regulation" to the following address:

>> Major League Baseball Players Association
>> ATTENTION:  Agent Regulation
>> 12 E. 49th Street
>> New York, NY 10017

> A copy of the grievance and any subsequent arbitration filing also must be served on the opposing party or parties by mail or personal delivery.  Filing or service of the grievance, or any subsequent arbitration filing, by electronic mail is also permitted if the recipient acknowledges by electronic mail or other writing that the grievance or filing was received.

> **§7(A)(3) – Respondent's Answer to the Grievance** – The party or parties against whom the grievance has been filed ("the Respondent(s)") shall file with the MLBPA and serve the party who filed the grievance ("the Grievant") a written answer to the grievance within thirty (30) days of receipt of the grievance.  The answer shall:

>> **§7(A)(3)(a)** – admit or deny the facts alleged in the grievance, and

>> **§7(A)(3)(b)** – set forth briefly any reasons why the grievance should be denied.

**§7(A)(4) – Counterclaims by Respondent against the Grievant** – An answer may also include any counterclaims the Respondent wishes to assert against the Grievant.  Any counterclaim shall allege in plain terms:

 **§7(A)(4)(a)** – the facts and circumstances giving rise to the counterclaims asserted,

 **§7(A)(4)(b)** – the provision(s) of any agreement(s) or Regulations alleged to have been violated, and

 **§7(A)(4)(c)** – the specific relief sought from the Arbitration Tribunal.

A single answer may combine multiple counterclaims or claims against more than one party if the claims arose out of the same transaction, agreement or occurrence, or are sufficiently related that processing the claims as a single case would promote efficiency and cost-effectiveness.

**§7(A)(5) – Grievant's Reply** – If Respondent's answer to the grievance alleges any facts not included in the grievance or any counterclaim against the Grievant, the Grievant shall file with the MLBPA and serve on the Respondent a reply to the answer within thirty (30) days of receipt of the answer.  The reply shall:

 **§7(A)(5)(a)** – admit or deny any facts alleged in the answer or counterclaim that were not included in the grievance, and

 **§7(A)(5)(b)** – set forth briefly any reasons why the counterclaim should be denied.

**§7(A)(6) – Time Limit for Grievances and Counterclaims** – Any grievance or counterclaim must be filed with the MLBPA and served on the opposing party(ies) within one hundred and eighty (180) days from the later of:

 **§7(A)(6)(a)** – the date of the occurrence of the event upon which the grievance or counterclaim is based, or

 **§7(A)(6)(b)** – the date on which the facts giving rise to the grievance or counterclaim became known or reasonably should have become known to the party filing the grievance or counterclaim.

**§7(A)(7) – Application of Time Limits; Tolling, Waiver or Extension** – The time limit for filing and serving grievances or counterclaims is intended only to prevent Players, Player Agents, Expert Agent Advisors and Applicants from being substantially prejudiced by having to defend against stale claims.  The time limits for filing and serving answers to grievances and replies to counterclaims are intended to promote expeditious processing of claims; the Arbitrator may, however, extend the time limits if he or she determines that principles of equitable tolling support an extension.

 **§7(A)(7)(a) – Waiver or Tolling of Time Limits** – Time limits provided in this Section 7(A) are subject to waiver by the conduct of a party or may be waived or tolled by agreement of the parties.

45

**§7(A)(7)(b) – Extension of Time Limits by the MLBPA or Arbitrator** – When a dispute has not yet been assigned to an Arbitrator, any time limit provided in this Section 7(A) may be extended by the MLBPA, upon good cause shown by either party.  When a dispute has been assigned to an Arbitrator, any time limits provided in this Section 7(A) may be extended by the Arbitrator, upon good cause shown by either party or the MLBPA.  Any application to the MLBPA or the Arbitrator for an extension of time shall be in writing, and served on all other parties and the MLBPA.

**§7(A)(8) – Referral of Dispute to Arbitration** – In any dispute subject to this Section 7(A), after the grievance, answer and any reply have been filed and served (or if no answer or reply has been filed, the time limits for filing an answer or reply have expired), the MLBPA shall select a professional and skilled Arbitrator distinguished in the field of labor relations and/or contract interpretation to serve as Arbitrator of the dispute.  The MLBPA shall then notify the parties and Arbitrator in writing that the dispute has been referred to arbitration and assigned to the selected Arbitrator.

**§7(A)(9) – Location and Schedule for Hearing** – The Arbitrator shall schedule a hearing on the dispute at the offices of the MLBPA in New York City.  In response to a written request filed by any party or the MLBPA, and served on the other parties and the MLBPA, the Arbitrator, after giving the other parties and the MLBPA an opportunity to respond, may modify the schedule or location of the hearing, taking into account the costs, inconvenience and fairness to the parties and the MLBPA of any proposed schedule or location.  If practicable, the Arbitrator shall establish the schedule and location of the hearing to conform with any agreement among the parties and the MLBPA concerning those issues.

**§7(A)(10) – Hearing Continuances** – Once a hearing has been scheduled, the Arbitrator may grant a continuance and reschedule the hearing, upon a showing of good cause in a written application for continuance filed by any party or the MLBPA, and served on the other parties and the MLBPA.

**§7(A)(11) – Rules of Procedure for Arbitration Hearings** – The rules of procedure for the arbitration shall be established by the Arbitrator.  To the extent deemed practicable by the Arbitrator and consistent with this Section 7(A), the rules shall conform to the rules governing arbitration hearings in the Voluntary Labor Arbitration Rules of the American Arbitration Association.  The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.  The Arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the Arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**§7(A)(12) – Exchange of Exhibits and Witness List; Other Discovery** – Prior to the scheduled commencement of the hearing, at such time as the parties may agree or as the Arbitrator shall direct, the parties shall exchange copies of all potential exhibits they may offer in evidence at the hearing (or descriptions of  any potential exhibits that cannot be copied) and a list of the potential witnesses they may call, including a brief description

46

of the subjects about which each witness is expected to testify.  No exhibit or testimony that was not so disclosed to the opposing party shall be allowed in evidence, except for rebuttal exhibits or testimony, or with leave of the Arbitrator upon a showing of good cause. There shall be no other pre-hearing discovery, except as agreed by all parties or deemed necessary for a fair hearing and ordered by the Arbitrator, upon a showing of good cause.

**§7(A)(13) – Informal Hearing; Evidence; Testimony by Telephone or Affidavit** – The hearing before the Arbitrator shall be informal.  The parties may appear in person or by legal counsel or other representative.  The parties and the MLBPA shall be afforded a full opportunity to present, through testimony or otherwise, any evidence relevant and material to the issues.  The Arbitrator shall determine the relevance and materiality of the evidence offered and shall not be bound by strict rules of evidence.  Unless the Arbitrator rules otherwise, testimony of witnesses may be taken by telephone or the Arbitrator may receive the evidence of witnesses by affidavit, giving it such weight as seems proper after consideration of any objection made to its admission.

**§7(A)(14) – Participation by the MLBPA** – In its role as collective bargaining representative of the Players, and promulgator of the Regulations, the MLBPA may appear at the hearing and participate in the proceedings to protect the interests of the bargaining unit and the integrity of the Regulations and to offer whatever evidence or assistance may be necessary or helpful to a just resolution of the dispute.  The MLBPA appears not as an advocate for any party, but shall have the right to call, examine and cross-examine witnesses, to offer evidence and to argue or brief any issue affecting the bargaining unit or the Regulations.

**§7(A)(15) – Post-hearing Briefs or Argument** – Upon close of the hearing, the Arbitrator will advise the parties and MLBPA whether written briefs may be filed or whether the parties and MLBPA should present their arguments orally.  The Arbitrator shall fix the time briefs are to be filed or the time and place for oral arguments.

**§7(A)(16) – Arbitrator's Final and Binding Decision and Award** – To the extent practicable, within thirty (30) days after the receipt of briefs or oral arguments, the Arbitrator shall issue a written decision and award, including any appropriate remedy or remedies.  The award shall direct the parties to pay the costs of the arbitration, including the fees and expenses of the Arbitrator and the transcript costs, in accordance with Section 7(A)(17).  The award shall constitute a full, final and complete resolution of the grievance and any counterclaims, and will be binding on all the parties to the dispute.

**§7(A)(17) – Costs of Arbitration** – Each party will bear the costs of its own witnesses and counsel.  Costs of arbitration, including the Arbitrator's fees and expenses, will be borne equally by the parties; provided, however, that if the Arbitrator concludes that any claim or defense was frivolous or was filed in bad faith, the Arbitrator may assess the party asserting such claim or defense with some or all of the opposing party's costs, including but not limited to the opposing party's attorneys fees.  If the Arbitrator grants a money award, it shall be paid within thirty (30) days, or such other period as the award may direct. Hearings ordinarily will be transcribed unless the parties and MLBPA, with the concurrence of the Arbitrator, agree otherwise, or unless the Arbitrator so directs.  Costs of the original transcript, the making of which will be arranged by the MLBPA, will be divided equally among the parties and MLBPA.  Each party ordering a copy of the transcript will be responsible for the cost of that party's copy.

**§7(A)(18) – Use of Proceedings and Decisions** – Arbitration proceedings pursuant to this Section 7(A) are confidential, except to the extent that disclosure of any aspect of the proceedings (*e.g.,* the grievance, answer, reply, briefs or other filings, hearing transcript, exhibits, etc.) is necessary, in the judgment of the MLBPA, for the effective administration of these Regulations or the effective representation of Players.  However, in its sole, unreviewable discretion, the MLBPA may make decisions and awards by arbitrators public.  In addition, the MLBPA may make copies of the decisions and awards available to players, Player Agents, Expert Agent Advisors, Applicants and their attorneys or other hearing representatives, for the purposes of researching arbitral precedents and citing to arbitrators in arguments and briefs.

## §7(B) – Procedures for Disputes Between a Player Agent or Applicant or Expert Agent Advisor and the MLBPA

The following procedures exclusively shall apply to all disputes between a Player Agent, Expert Agent Advisor, Applicant, Agency or affiliated persons or entities, or any of their employers or any entity through which they conduct business and the MLBPA, its officers, employees, and representatives, including but not limited to, any appeal to arbitration of an appealable decision by the MLBPA with respect to his or her certification or discipline.

**§7(B)(1) – Notice to Applicant, Player Agent or Expert Agent Advisor** – In every instance in which the MLBPA denies certification to an Applicant, imposes limits or conditions on the certification granted to a Player Agent, Expert Agent Advisor or Applicant, or takes disciplinary action against a Player Agent, Expert Agent Advisor or Applicant, the MLBPA shall provide that individual with written notice of such action. The notice shall set forth the action taken, a brief statement of the factual basis for the action taken and the provisions of these Regulations violated or otherwise involved in the action taken.  The notice shall be served upon the Applicant, Player Agent or Expert Agent Advisor by prepaid certified mail addressed to the Applicant's, Player Agent's or Expert Agent Advisor's main business office or, alternatively, may be hand-delivered to the Applicant, Player Agent or Expert Agent Advisor.  Service of the notice by electronic mail is permitted if the recipient acknowledges receipt of the notice by electronic mail or other writing.

**§7(B)(2) – Filing of Appeal by Player Agent, Expert Agent Advisor or Applicant** – A Player Agent, Expert Agent Advisor or Applicant upon whom such notice has been served shall have **thirty (30) days** from receipt of the notice to file a written appeal contesting the MLBPA's action.  The appeal must be filed with the MLBPA by mail or personal delivery, in an envelope marked "ATTENTION: Agent Regulation Case" to the MLBPA's office at:

> Major League Baseball Players Association
> ATTENTION:  Agent Regulation Case
> 12 East 49th Street
> New York, NY  10017

Service of the appeal by electronic mail is permitted if the MLBPA acknowledges receipt of the appeal by electronic mail or other writing.

**§7(B)(3) – Contents of the Appeal** – The appeal filed by the Player Agent, Expert Agent Advisor or Applicant shall:

   **§7(B)(3)(a)** – admit or deny each of the facts set forth in the notice, and

   **§7(B)(3)(b)** – allege any additional facts, make any arguments or describe any mitigating circumstances which the Applicant, Player Agent or Expert Agent Advisor wishes to include.

**§7(B)(4) – Failure to File a Timely Appeal** – The failure of a Player Agent, Expert Agent Advisor or Applicant to file a timely appeal within thirty (30) days from receipt of the notice shall be deemed to constitute an acceptance of the action set forth in the notice.

**§7(B)(5) – Stay of MLBPA Action During Appeal** – In the case of a notice of a denial of certification, or the imposition of limits or conditions on the granting of a certification, an Applicant's timely filed appeal ordinarily will **not** operate to stay the MLBPA's action; provided that, where the MLBPA, either upon the basis of the appeal itself or for other good cause, determines that it would be appropriate to do so, it may grant certification or remove or modify one or more limitation(s) or condition(s) until the appeal is resolved.

In the case of a notice of a revocation or suspension of certification, or other disciplinary action, a timely filed appeal ordinarily **will** operate to stay the MLBPA's action until the appeal is resolved; provided that, where the MLBPA determines that it is necessary to do so to protect the interests of Players, it may immediately implement the action set forth in the notice or lift or modify any stay previously in effect.

**§7(B)(6) – Procedure Invoked by Filing and Serving a Grievance** – A Player Agent, Expert Agent Advisor or Applicant or his or her employer or any entity through which he or she conducts business shall invoke the arbitration procedure by filing and serving a written grievance with the MLBPA and, if applicable, serving a copy on any other opposing party.  The grievance shall allege in plain terms:

   **§7(B)(6)(a)** – the facts and circumstances giving rise to the dispute,
   **§7(B)(6) (b)** – the claim(s) he or she asserts,
   **§7(B)(6)(c)** – the provision(s) of any agreement(s), laws, or Regulations alleged to have been violated, and
   **§7(B)(6)(d)** – the specific relief sought from the Arbitration Tribunal.

A single grievance may combine multiple claims against more than one party if the claims arose out of the same transaction, agreement or occurrence, or are sufficiently related that processing the claims as a single case would promote efficiency and cost-effectiveness.

**§7(B)(7) – Method of Filing and Serving Grievance and other Arbitration Papers** – A  grievance, or any subsequent arbitration filing shall be filed with the MLBPA by delivering or mailing it in an envelope marked "Attention: Agent Regulation" to the following address:

Major League Baseball Players Association

49

ATTENTION:  Agent Regulation
12 E. 49th Street
New York, NY 10017

A copy of the grievance and any subsequent arbitration filing must also be served on any other opposing party or parties, if any, by mail or personal delivery.  Filing or service of the grievance, or any subsequent arbitration filing, by electronic mail is also permitted if the recipient acknowledges by electronic mail or other writing that the grievance or filing was received.

**§7(B)(8) – Answer to the Grievance** – The MLBPA and any other parties against whom the grievance has been filed ("the Respondent(s)") shall file and serve the party who filed the grievance ("the Grievant") a written answer to the grievance within thirty (30) days of receipt of the grievance.  The answer shall:

**§7(B)(8)(a)** – admit or deny the facts alleged in the grievance, and

**§7(B)(8)(b)** – set forth briefly any reasons why the grievance should be denied.

**§7(B)(9) – Counterclaims by Respondent against the Grievant** – An answer may also include any counterclaims the Respondent wishes to assert against the Grievant.  Any counterclaim shall allege in plain terms:

**§7(B)(9)** – the facts and circumstances giving rise to the counterclaims asserted,

**§7(B)(9)** – the provision(s) of any agreement(s) or Regulations alleged to have been violated, and

**§7(B)(9)** – the specific relief sought from the Arbitration Tribunal.

A single answer may combine multiple counterclaims or claims against more than one party if the claims arose out of the same transaction, agreement or occurrence, or are sufficiently related that processing the claims as a single case would promote efficiency and cost-effectiveness.

**§7(B)(10) – Grievant's Reply** – If Respondent's answer to the grievance alleges any facts not included in the grievance or any counterclaim against the Grievant, the Grievant shall file and serve on the Respondent a reply to the answer within thirty (30) days of receipt of the answer.  The reply shall:

**§7(B)(10)(a)** – admit or deny any facts alleged in the answer or counterclaim that were not included in the grievance, and

**§7(B)(10)(b)** – set forth briefly any reasons why the counterclaim should be denied.

**§7(B)(11) – Time Limit for Grievances and Counterclaims** – Any grievance or counterclaim that is not related to an appeal of a denial of certification, the imposition of limits or conditions on a certification, or disciplinary action, must be filed and served with the MLBPA within one hundred and eighty (180) days from the later of:

50

**§7(B)(11)(a)** – the date of the occurrence of the event upon which the grievance or counterclaim is based, or

**§7(B)(11)(b)** – the date on which the facts giving rise to the grievance or counterclaim became known or reasonably should have become known to the party filing the grievance or counterclaim.

**§7(B)(12) – Submission to Arbitration** – Upon the MLBPA's receipt of a timely appeal or after the grievance, answer and any reply have been filed and served (or if no answer or reply has been filed, the time limits for filing an answer or reply have expired), the dispute shall be deemed submitted to impartial arbitration.

**§7(B)(13) – Selection of AAA Arbitrator** – Within thirty (30) days of the MLBPA's receipt of the appeal or after the grievance, answer and any reply have been filed and served (or if no answer or reply has been filed, the time limits for filing an answer or reply have expired), the parties shall jointly request from the American Arbitration Association a list of five (5) professional and skilled labor arbitrators who are members of the National Academy of Arbitrators. Within fourteen (14) days of receipt of the list, the parties shall select the Arbitrator of their dispute, by alternately striking names from the list until one remains. A coin flip shall determine which party shall strike the first name. Nothing in this paragraph prohibits a Player Agent, Expert Agent Advisor or Applicant and the MLBPA from agreeing upon the appointment of the Arbitrator.

**§7(B)(14) – Location and Schedule for Hearing** – Upon selection, the Arbitrator shall schedule the hearing to take place in New York City, or in such other city as the parties, with the concurrence of the Arbitrator, may agree upon, or the Arbitrator on his or her own motion may direct.

**§7(B)(15) – Hearing Continuances** – Once a hearing has been scheduled, the Arbitrator may grant a continuance and reschedule the hearing upon a showing of good cause in a written application for continuance filed by any party, and served on the other party.

**§7(B)(16) – Rules of Procedure for Arbitration Hearings** – The rules of procedure for the arbitration hearing shall be established by the Arbitrator. To the extent deemed practicable by the Arbitrator and consistent with this Section 7(B), the rules of procedure shall conform to the rules governing arbitration hearings in the Voluntary Labor Arbitration Rules of the American Arbitration Association. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement. The Arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the Arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**§7(B)(17) – Exchange of Exhibits and Witness List; Other Discovery** – Prior to the scheduled commencement of the hearing at such time as the parties may agree or the Arbitrator shall direct, the parties shall exchange copies of all potential exhibits they may offer in evidence at the hearing (or descriptions of any potential exhibits that cannot be

copied) and a list of the potential witnesses they may call, including a brief description of the subjects about which each witness is expected to testify. No exhibit or testimony that was not so disclosed to the opposing party shall be allowed in evidence, except for rebuttal exhibits or testimony, or with leave of the Arbitrator upon a showing of good cause. There shall be no other pre-hearing discovery, except as agreed by all parties or as deemed necessary for a fair hearing and ordered by the arbitrator, upon a showing of good cause.

**§7(B)(18) – Informal Hearing; Evidence; Testimony by Telephone or Affidavit** – The hearing before the Arbitrator shall be informal. The parties may appear in person or by legal counsel or other representative and shall be afforded a full opportunity to present, through testimony or otherwise, any evidence relevant and material to the MLBPA's reasons for its actions, the conduct of the Applicant, Player Agent or Expert Agent Advisor giving rise to the notice, or the issues presented in the grievance or counterclaims. The Arbitrator shall determine the relevance and materiality of the evidence offered and shall not be bound by the strict rules of evidence. Unless the Arbitrator rules otherwise, testimony of witnesses may be taken by telephone or the Arbitrator may receive the evidence of witnesses by affidavit, giving it such weight as seems proper after consideration of any objection made to its admission.

**§7(B)(19) – Burden of Proof; Standard for Review** – In any dispute involving an appeal of an appealable decision by the MLBPA with respect to an agent's certification or discipline, in order to sustain its action, the MLBPA shall have the burden of proving that its action was not unreasonable or arbitrary. With respect to factual findings, the MLBPA will satisfy its burden if the Arbitrator determines that substantial evidence on the record as a whole supports its findings.

**§7(B)(20) – Post-hearing Briefs or Argument** – Upon close of the hearing, the Arbitrator will advise the parties whether written briefs may be filed or whether the parties should present their arguments orally. The Arbitrator shall fix the time briefs are to be filed or the time and place for oral arguments.

**§7(B)(21) – Arbitrator's Final and Binding Decision and Award** – To the extent practicable, within thirty (30) days after the receipt of briefs or oral arguments, the Arbitrator shall issue a written decision and award, including any appropriate remedy or remedies, and affirming, vacating or modifying the MLBPA's action. The award shall constitute a full, final and complete resolution of the grievance, any counterclaims, and appeal and it will be binding on the Player Agent, Expert Agent Advisor and/or Applicant and the MLBPA.

**§7(B)(22) – Costs of Arbitration** – Each party will bear the costs of its own witnesses and counsel. Hearings will be transcribed unless the parties, with the concurrence of the Arbitrator, agree otherwise, or unless the Arbitrator so directs. Each party ordering a copy of the transcript will be responsible for the cost of that party's copy. Other costs of the arbitration, including the fees and expenses of the Arbitrator, and cost of the original transcript, will be borne equally between the parties to the dispute.

**§7(B)(23) – Use of Proceedings and Decisions** – Arbitration proceedings pursuant to this Section 7(B) are confidential, except to the extent that disclosure of any aspect of the proceedings (*e.g.,* the notice, appeal, briefs or other filings, hearing transcript, exhibits, etc.) is necessary, in the judgment of the MLBPA, for the effective administration of these

Regulations or the effective representation of Players.  However, in its sole, unreviewable discretion, the MLBPA may make public decisions and awards by arbitrators.  In addition, the MLBPA may make copies of the decisions and awards available to players, Player Agents, Expert Agent Advisors, Applicants and their attorneys or other hearing representatives, for the purposes of researching arbitral precedents and citing them to arbitrators in arguments and briefs.

## Section 8 – Administration, Interpretation and Enforcement of Regulations

The MLBPA's Executive Board authorizes the Executive Director, or his or her designees, to administer, interpret and enforce these Regulations and to recommend amendments thereto.  In exercising that authority, the Executive Director, or his or her designee(s), shall develop and promulgate the Application for certification of Player Agents and other forms (*e.g.*, Registration Form, *Player Agent Designation* form, Fee Statement, Standard Player Agent Representation Agreement) necessary for administration of the Regulations, and may consult with members of the MLBPA's Executive Subcommittee, as the Executive Director deems appropriate.  In any arbitral or judicial proceedings in which the meaning and application of the regulations is at issue, the MLBPA's interpretation of the Regulations and their applicability is entitled to deference.

The boldface numbers and headings preceding each section, subsection, paragraph and subparagraph of these Regulations are only for purposes of description or reference, and are not intended to have any legal effect.

## Section 9 – Player Agent Advisory Committee

A Player Agent Advisory Committee shall be appointed by the MLBPA's Executive Director for the purpose of reviewing and discussing the MLBPA's implementation, interpretation and enforcement of the Regulations, any potential amendments to the Regulations and relations among Players, Player Agents, Expert Agent Advisors and the MLBPA.   The Player Agent Advisory Committee may make recommendations to the Executive Director on any issues of concern to Player Agents or Expert Agent Advisors.  The Player Agent Advisory Committee shall consist of up to nine active, certified Player Agents. All certified Player Agents are eligible to be considered for appointment to the Committee.  Player Agents appointed to the Committee shall serve for a term of two years, except for the first three members appointed, whose initial term shall expire after three years.  No Player Agent may serve two successive terms, but a Player Agent may be reappointed and serve more than one term, so long as at least two years intervene between terms.  In making appointments to the Committee, the Executive Director shall attempt to assemble a Committee whose membership is diverse and representative of various different categories of the Player Agent population (*e.g.*, by experience level, geography, size of agency, etc.).  The Committee shall meet at least twice a year.  The Executive Director or his or her designee shall preside over the meeting.  Any members of the MLBPA's staff selected by the Executive Director, and any interested Player may attend any Committee meeting and participate in the discussion.  The MLBPA shall reimburse the members of the Committee for their actual and reasonable expenses for travel, meals and lodging in attending Committee meetings.

## Section 10 – Effective Date and Amendment

These Regulations were originally adopted effective June 17, 1988, and amended on January 10, 1995, July 1, 1997, February 17, 2006, August 27, 2010, effective October 1, 2010; December 3, 2014  effective January 1, 2015, December 3, 2015 effective February 15, 2016, November 29, 2017 effective December

8, 2017, November 28, 2018, effective December 12, 2018, and December 4, 2019, effective December 4, 2019.  They may be amended further by action of the MLBPA's Executive Board.

# Addendum A

**Application Fee -** The fee for all applicants for General Certification, Limited Certification, or Certification as an Expert Agent Advisor is $2,000.  This fee will cover the cost of processing and reviewing the application, the background check, and the written exam.

**Annual Registration Fee:** The annual registration fee for General Certified Agents and Expert Agent Advisors is $1,500.  The annual registration fee for Limited Certified Agents is $500.  This fee will cover the cost of administering MLBPA's agent regulation program.

**Fines:** An agent who fails to submit any of the required forms or fails to otherwise comply with reporting requirements will be notified of his or her failure and given the opportunity to correct that failure.  If the problem is not corrected immediately, the agent will be fined $500 for the first infraction and that fine will increase by increments of $500 with each subsequent infraction.  An agent who repeatedly fails to comply will run the risk of losing his or her certification.  The following is a non-exhaustive list of MLBPA reporting requirements:

| Reporting Requirement | Deadlines |
|---|---|
| Annual Agent Registration and fees | – Annual obligation.  *See* §4(H)(3). |
| Provide accurate information in the Registration | – Continuing obligation.  Additional discipline, including but not limited to suspension or decertification, may also be imposed.  *See* §4(H)(2) and §5(A)(1). |
| Player Agent Designation forms, Exhibit B, and Representation Agreements | – Filed with the MLBPA within 10 days of signing, provided that a General Certified Agent who is re-designated by an existing client between February 1 and April 5 may submit these documents to the MLBPA by no later than April 15 of that year.  *See* §6(B)(3) and §6(D). |
| Report any gifts to a Player exceeding $500 in value; once a player has received over $500 worth of gifts, the purpose and terms of each subsequent individual gift of *any* value promised or made during the same calendar year must be disclosed in writing to the MLBPA – Exhibit D | – Prior to such gift being promised or made, if practicable, or as soon thereafter as practicable, and in no case more than 48 hours thereafter.  *See* §5(B)(5)(b). |
| Annual Equipment Disclosure Report – Exhibit E | – Filed with the MLBPA on or before March 1st.  *See* §5(B)(5)(e)(iv). |

| | |
|---|---|
| Notify the MLBPA of the total value of baseball equipment purchased for a former client during the current calendar year | – Within 48 hours after a professional player ceases to be a client.  *See* §5(B)(5)(e)(iv). |
| Annual Fee Statement – Exhibit F | – Filed with the MLBPA on or before March 1st (in addition to providing a copy to each Player who paid you any fees or reimbursed any expenses to you).  *See* §5(A)(4). |
| Transfer all records of a former client to the player or his designee | – Upon request by a player or the MLBPA.  *See* §5(A)(9) |
| Report the reduction/waiver of fees or expenses for a client | – First disclosed in writing to the MLBPA and disclosed upon request to any other player represented by or being Recruited by Player Agent.  *See* §5(B)(5)(g)(ii). |
| Report any meals purchased for a non-client and any transportation or lodging expenses paid for a non-client player's visit to the Agent's office | – Advance written notice to the MLBPA no more than 72 hours and no less than 24 hours before the purchase of the meal or promise to pay or payment of transportation or lodging expenses of the player.  If advanced notice is not possible, the Player Agent shall provide written notice to the MLBPA as soon as possible, and in no case more than 24 hours after the purchase of a meal or promise to pay or payment of transportation or lodging expenses of the player.  Certified Player Agents shall submit these disclosures using the appropriate forms on the Agent website (https://www.mlbpaagent.org) and Applicants for Certification shall make these disclosures by electronic mail to agent.reg@mlbpa.org  *See* §5(B)(5)(c). |
| Report contacts with non-client Players | – Advance written notice to the MLBPA no more than 72 hours and no less than 24 hours before the communication is initiated.  If advanced notice is not possible, the Player Agent shall provide written notice to the MLBPA as soon as possible, and in no case more than 24 hours after such communication is initiated.  Certified Player Agents shall submit these disclosures using the appropriate forms on the Agent website (https://www.mlbpaagent.org).  *See* §5(B)(8). |